EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ivelisse Blás Toledo, Luis Edgardo Nieves Piñeiro y la Sociedad Legal de Gananciales<br><br>        Recurridos<br><br>            v.<br><br>Hospital Nuestra Señora de La Guadalupe, et al.<br><br>        Recurrido<br><br>José R. Hidalgo y su aseguradora Insurance Co. of North America<br><br>        Peticionarios | Certiorari<br><br>2006 TSPR 47<br><br>167 DPR ____ |

Número del Caso: CC-2003-161

Fecha: 30 de marzo de 2006

Tribunal de Apelaciones:

                Circuito Regional I de San Juan-Panel III

Juez Ponente:

                Hon. Antonio J. Negroni Cintrón

Abogados de la Parte Peticionaria:

                Lcdo. Harold D. Vicente
                Lcdo. Roberto Abesada-Agüet
                Lcdo. Héctor Cuebas Tañon

Abogado de la Parte Recurrida:

                Lcdo. José A. Masini Soler
                Lcdo. Iván F. González Carmona
                    Lcdo. José Fco. Chaves Caraballo


Materia: Daños y Perjuicios


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ivelisse Blás Toledo,
Luis Edgardo Nieves Piñeiro
y la Sociedad Legal de Gananciales
        Recurridos

            v.                          CC-2003-0161  Certiorari

Hospital Nuestra Señora de
la Guadalupe, *et al.*
    Recurrido

José R. Hidalgo y su aseguradora
Insurance Co. of North America
        Peticionarios

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 30 de marzo de 2006.

Debemos interpretar en esta ocasión el alcance de un contrato de transacción, otorgado en el contexto de una liquidación bajo el Capítulo 7 de la Ley Federal de Quiebras, mediante el cual se releva de toda obligación frente al demandante a uno de los deudores solidarios por sentencia. En particular, debemos determinar el efecto, si alguno, del contrato aludido sobre la obligación de los demás deudores solidarios para con el demandante.

I

En 1982, la Sra. Ivelisse Blás Toledo y algunos familiares (en adelante y en conjunto,

señora Blás Toledo) presentaron ante el antiguo Tribunal Superior una demanda por impericia médica contra el Hospital Nuestra Señora de la Guadalupe, Inc., (en adelante, el Hospital de la Guadalupe) y contra otros demandados, entre ellos, el Dr. José R. Hidalgo y su compañía aseguradora, Insurance Co. of North America (en adelante, el doctor Hidalgo).[1] Luego de múltiples trámites judiciales, el foro de instancia dictó sentencia condenando a los demandados a pagar solidariamente a la señora Blás Toledo la suma de $2,224,743.27. Además, para fines de la relación interna, fijó los por cientos de responsabilidad de cada demandado, siendo el Hospital de la Guadalupe responsable de los daños en un 35%. Por último, les impuso el pago de costas, gastos y honorarios de abogado.

Inconformes, el Hospital de la Guadalupe y el doctor Hidalgo, entre otros demandados, recurrieron ante nos. Este Tribunal, mediante Opinión y Sentencia en el caso *Blás v. Hosp. Guadalupe*, 146 D.P.R. 267 (1998), modificó el dictamen recurrido en cuanto a ciertas cuantías concedidas y con respecto a la fijación de los por cientos de responsabilidad de algunos demandados. Así modificada, la sentencia de instancia fue confirmada.[2]

---

[1] Mediante ésta se reclamó indemnización por los serios daños ocasionados a la hija menor de edad de la Sra. Ivelisse Blás Toledo, al ser sometida a una intervención quirúrgica contraindicada.

[2] La determinación sobre el grado de responsabilidad del Hospital de la Guadalupe fue, a su vez, confirmada.

Durante este proceso, el Hospital de la Guadalupe se había acogido al Capítulo 11 de la Ley Federal de Quiebras, petición que luego fue convertida al Capitulo 7 de la misma ley. La señora Blás Toledo compareció a dicho procedimiento y presentó su reclamación (*proof of claim*) contra el Hospital de la Guadalupe. En vista de ello, y antes de que recayera nuestra sentencia, el Síndico de Quiebras, en representación del mencionado hospital, y la señora Blás Toledo suscribieron un contrato titulado "Settlement and Release Agreement". Mediante éste, en esencia, la señora Blás Toledo recibió del caudal en quiebra $150,000.00 a cambio de un relevo total de cualquier causa de acción, obligación o reclamación que éstos tuvieran o pudieran tener contra el Hospital de la Guadalupe. Dicha transacción fue aprobada por la Corte Federal de Quiebras para el Distrito de Puerto Rico.

Devuelto el caso al foro de instancia, se inició la etapa de ejecución de sentencia. La aludida transacción y el pago de $150,000.00 fueron informados al tribunal de instancia y éste redujo la referida cantidad del monto total que se debía de la sentencia. A través de esta etapa, se suscitaron varias controversias en torno al cómputo de los intereses, cantidades satisfechas y otras defensas levantadas por algunos de los demandados, acudiendo éstos en varias ocasiones al foro apelativo intermedio y a este Tribunal.

Posteriormente, el doctor Hidalgo solicitó al foro de instancia una vista urgente y adujo que existía un "impasse" entre éstos y la señora Blás Toledo en cuanto al pago de la sentencia y su cómputo. Entre otros argumentos, sostuvo por primera vez que el 35% de la sentencia, correspondiente a la responsabilidad del Hospital de la Guadalupe, fue finiquitado y transado por la señora Blás Toledo en el proceso de quiebras. Solicitó, por tanto, que la cantidad que representaba dicho porcentaje fuera reducida del total adeudado de la sentencia y no únicamente los $150,000.00 recibidos por los demandantes. La señora Blás Toledo se opuso y argumentó que todos los planteamientos del doctor Hidalgo habían sido resueltos de forma final y firme. En vista de ello, el tribunal de instancia resolvió que no tenía jurisdicción para reabrir el caso y pasar juicio sobre un asunto que pudo haberse levantado anteriormente.

Insatisfecho, el doctor Hidalgo acudió al entonces Tribunal de Circuito de Apelaciones. Dicho foro resolvió que el doctor Hidalgo estaba impedido de levantar como defensa la transacción y relevo del Hospital de la Guadalupe en esta etapa de los procedimientos porque ello constituía cosa juzgada. Sin embargo, devolvió el caso al tribunal de instancia y ordenó la celebración de una vista, por otras razones.

No conforme, el doctor Hidalgo presenta ante nosotros el recurso del epígrafe. Arguye que la

interpretación del referido contrato de transacción es relevante en la etapa de ejecución de sentencia y que la señora Blás Toledo no puede cobrar dos veces una parte de la sentencia que ya transó. Expedimos el auto de *certiorari* en reconsideración. La señora Blás Toledo ha comparecido. Resolvemos con el beneficio de los respectivos alegatos.

## II

Resulta necesario considerar, de entrada, si en esta etapa de los procedimientos procede o no pasar juicio sobre el contrato de transacción y relevo suscrito por la señora Blás Toledo y el Síndico de Quiebras, en representación del Hospital de la Guadalupe. Tanto el foro de instancia como el tribunal apelativo intermedio han resuelto que el planteamiento que nos presenta el doctor Hidalgo es tardío y, por tanto, es cosa juzgada. Veamos.

## A

En nuestra jurisdicción, la doctrina de cosa juzgada tiene base estatutaria en el Art. 1204 de nuestro Código Civil. 31 L.P.R.A. sec. 3343. Conforme a éste, surte efecto la presunción de cosa juzgada en otro juicio cuando:

> [E]ntre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. *Id.*

La aplicación de esta doctrina trae como consecuencia que la sentencia emitida en un pleito anterior impida que se litiguen posteriormente, entre las mismas partes y sobre las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas, así como aquéllas que pudieron haber sido litigadas en el primero. *Méndez v. Fundación Esposos Luis Méndez Vaz y María Bagur, Inc.*, res. el 11 de julio de 2005, 2005 TSPR 101; *Rodríguez Rodríguez v. Colberg Comas*, 131 D.P.R. 212 (1992); *Banco de la Vivienda v. Carlo Ortiz*, 130 D.P.R. 730 (1992).

El propósito que persigue la presunción de cosa juzgada está cimentado en intereses de gran valía para nuestro ordenamiento jurídico. Por un lado, el del Estado en ponerle fin a los litigios de manera que no se "eternicen" las cuestiones judiciales; por el otro lado, proteger a los ciudadanos para que no sean sometidos en dos ocasiones a las molestias que supone litigar la misma causa. *Mun. de San Juan v. Bosque Real S.E.*, res. el 4 de marzo de 2003, 2003 TSPR 31; *Pérez v. Bauzá*, 83 D.P.R. 220 (1961). Además, se logra impartir finalidad a los dictámenes judiciales para que las resoluciones que de ellos se derivan concedan certidumbre y certeza a las partes en litigio. *Parrilla Hernández v. Rodríguez Morales*, res. el 12 de noviembre de 2004, 2004 TSPR 173; *Worldwide Food Dis., Inc. v. Colón, et al.*, 133 D.P.R. 827 (1993).

No obstante, la referida doctrina no es de aplicación absoluta. La presunción de cosa juzgada tiene bien definidas excepciones en ley, y de orden equitativas. *Pérez v. Bauzá*, *supra*. Es por ello que hemos declinado a aplicarla inflexiblemente, máxime cuando estamos ante controversias que requieren consideraciones de orden público, o cuando su aplicación derrotaría los fines de la justicia o produciría resultados absurdos. *Parrilla Hernández v. Rodríguez Morales*, *supra*; *Meléndez Soberal v. García Marrero*, res. el 12 de septiembre de 2002, 2002 TSPR 119; *Pagán Hernández v. U.P.R.*, *supra*; *Mercado Riera v. Mercado Riera*, 100 D.P.R. 940 (1972).

En el caso particular del contrato de transacción, es norma reiterada que todos los asuntos comprendidos en éste constituyen cosa juzgada para las partes contratantes, estando éstas impedidas de volver sobre aquéllos. *Neca Mortg. v. A & W Dev. S.E.*, 137 D.P.R. 860 (1995); Art. 1715 del Código Civil de Puerto Rico (1930). Sin embargo, a pesar de que un contrato de transacción tiene el efecto de cosa juzgada, "no opera para impedir que el juzgador interprete su extensión y aplicación al pleito judicial en el que se levanta como defensa". *Sucn. Román v. Shelga Corp.*, 111 D.P.R. 782, 787 (1981) *citando a* A. Gullón Ballesteros, <u>La Transacción. Tratado Práctico de Derecho Civil</u>, Madrid, Instituto Nacional de Estudios Jurídicos, 1964, T. 43, Vol. 2, pág. 161; *Citibank v. Dependable Ins. Co.*, 121 D.P.R. 503 (1988); *Véase,*

*además*, Francisco J. Peláez, La Transacción; Su eficacia procesal, Barcelona, Bosch, 1987, pág. 163. Sencillamente, el efecto de cosa juzgada que se le da a la transacción "no impide que las partes puedan pedir la ejecución judicial del convenio". J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Bosch, 1982, T. II, Vol. 2, pág. 632.

B

En el caso ante nos, ha surgido una controversia en la etapa de ejecución de sentencia sobre el efecto y el alcance del contrato de transacción y relevo otorgado entre la señora Blás Toledo y el Síndico de Quiebras, en representación del Hospital de la Guadalupe. Ésta se circunscribe a determinar cómo incide dicho acuerdo sobre la satisfacción de la sentencia. Es decir, no requiere que se altere de forma alguna la adjudicación de responsabilidades ni las cuantías otorgadas en el caso *Blás v. Hosp. Guadalupe, supra*. No se pretende, igualmente, que se modifiquen las estipulaciones contenidas en el contrato de transacción. Se trata más bien de la interpretación, extensión y aplicación en la etapa de ejecución de sentencia de un acuerdo entre algunas de las partes que estuvieron involucradas en el litigio. Si dicho contrato de transacción pudo haber sido examinado en un pleito ulterior para determinar su verdadero alcance y aplicación, de acuerdo a nuestra jurisprudencia, no encontramos impedimento para hacerlo

en la etapa de ejecución de sentencia del pleito original, en donde se suscita la controversia.

Además, tampoco estamos propiamente ante un nuevo pleito donde se levantan las mismas cuestiones resueltas o que pudieron haberse resuelto en uno anterior. En el caso de autos, la referida transacción fue inicialmente informada al tribunal en la misma etapa de ejecución de sentencia. Según surge del expediente, el contrato de transacción y relevo tuvo su origen cuando el caso estaba en una etapa muy avanzada de los procedimientos, sometido en los méritos ante nuestra consideración, por lo que resulta difícil concluir que las partes pudieron haber litigado vigorosamente dicho asunto.

Por otro lado, de ser cierta la contención del doctor Hidalgo de que, mediante la referida transacción, la señora Blás Toledo ha cobrado y finiquitado una parte de la sentencia que ahora pretende cobrar a los demás demandados, se causaría un grave perjuicio a los fines de la justicia si este Tribunal no lo declara así, permitiendo de ese modo una doble indemnización que no tendría apoyo en nuestro sistema de derecho.

Ante todas estas circunstancias, no podemos aplicar la doctrina de cosa juzgada. Ésta nunca fue incorporada a nuestro ordenamiento jurídico para inmunizar los contratos de transacción contra la interpretación judicial, ni para impedir su ejecución de acuerdo a sus

términos. Procede, por tanto, que entremos a evaluar la
transacción aludida.

III

A

La transacción es un contrato mediante el cual las
partes, a través de concesiones recíprocas, evitan la
provocación de un pleito o ponen fin a uno ya comenzado.
Art. 1709 del Código Civil de Puerto Rico (1930), 31
L.P.R.A. sec. 4821; *Neca Mortg. v. A & W Dev. S.E.*,
*supra*. Su formulación requiere que exista; (1) una
situación de controversia jurídica entre las partes y (2)
la intención de éstas de eliminarla o superarla mediante
concesiones recíprocas. *Neca Mortg. v. A & W Dev. S.E.*;
*Citibank v. Dependable Ins. Co.*, *supra*; L. Rivera Rivera,
El Contrato de Transacción: sus efectos en situación de
solidaridad, San Juan, Jurídica Editores, 1998, págs. 35-
45.

Este tipo de contrato se encuentra regulado por los
artículos 1710 a 1718 de nuestro Código Civil. En
específico, el artículo 1714 nos ilustra sobre los
parámetros que habrán de guiar nuestra interpretación
cuando nos corresponda determinar el alcance de una
transacción. Éste preceptúa:

> La transacción no comprende sino los
> objetos expresados determinadamente en
> ella, o que, por una inducción necesaria de
> sus palabras, deban reputarse comprendidos
> en la misma.
>
> La renuncia general de derechos se entiende
> sólo de los que tienen relación con la

disputa sobre que ha recaído la transacción. 31 L.P.R.A. sec. 4826.

Según la aludida disposición legal, los contratos de transacción deben interpretarse restrictivamente. *Citibank v. Dependable Ins. Co.*, *supra*; *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61 (1987); L. Rivera Rivera, *op. cit.*, pág. 61. La sabiduría de esta norma de interpretación recae:

> en que las transacciones se otorgan, generalmente, con carácter complejo, por las entregas u obligaciones recíprocas de los contratantes, con sacrificios mutuos de régimen excepcional en algunos aspectos, y, por tanto, no deben ser interpretados éstos con extensión, sino limitadamente, aunque sin descuidar lo de la reciprocidad como norma interpretativa. Q.M. Scaevola, Código Civil, Madrid, Instituto Editorial Reus, 1953, T. XXVIII, pág. 355.

Está claro, pues, que la eficacia del contrato de transacción no puede alcanzar a otros objetos que no surjan expresamente de su contenido. Igualmente, habrán de "estimarse comprendidas en la transacción las cuestiones que, por inducción necesaria de sus palabras, deban reputarse incluidas en ella, lo que revela que no basta cualquier deducción, sino sólo la que necesariamente se derive de sus términos". M. Albaladejo, Comentarios al Código Civil y Compilaciones Forales, Madrid, Ed. Rev. Der. Privado, 1983, T. XXII, Vol. 2, págs. 53-54.

Respecto a la renuncia general de derechos, resulta evidente que por más generales que sean sus términos, tiene que seguir la naturaleza de la transacción a que va

inherente y entenderse limitada a los mismos objetos, es decir, a las mismas diferencias suscitadas entre las partes y sobre las que ha de versar la transacción. J.M. Manresa y Navarro, Comentarios al Código Civil Español, Madrid, Ed. Reus, 1973, T. XII, pág. 161.

Es menester aclarar que la interpretación de los contratos de transacción también debe llevarse a cabo de acuerdo con las normas generales sobre la interpretación de contratos, mientras estas últimas no sean incompatibles con lo antes señalado. *Citibank v. Dependable Ins. Co.*, *supra*; *Negrón Rivera y Bonilla, Ex parte*, *supra*; *Sucn. Román v. Shelga Corp.*, *supra*. En virtud de estas normas generales, no deberán entenderse comprendidos en el contrato de transacción cosas distintas y casos diferentes de aquéllos sobre los que las partes se propusieron contratar. Art. 1235 del Código Civil; L. Rivera Rivera, *op. cit.*, pág. 61. Igualmente, se estará al sentido literal de los términos de la transacción, si éstos son claros. Art. 1233 del Código Civil. Por último, para juzgar la intención de las partes, se debe atender principalmente a los actos de éstos, anteriores, coetáneos y posteriores al contrato, así como a cualquier otra circunstancia indicativa de sus voluntades. Art. 1234 del Código Civil; *Merle v. West Bend Co.*, 97 D.P.R. 403 (1969).

B

Por otra parte, en materia de responsabilidad civil extracontractual, los co-causantes de un daño responden solidariamente ante el damnificado. *Arroyo v. Hosp. La Concepción*, 130 D.P.R. 596 (1992); *Ramos v. Caparra Dairy, Inc.*, 116 D.P.R. 60 (1985). Por consiguiente, en su relación jurídica, aplican todas las consecuencias que dimanan de la responsabilidad solidaria, según éstas se recogen en nuestro Código Civil. *Véase, García v. Gob. de la Capital*, 72 D.P.R. 138 (1951).

El carácter solidario de dicha obligación extracontractual descansa en elementales consideraciones de justicia. Según nos señala Puig Brutau:

> [E]l riesgo de la falta de solidaridad es que el lesionado no llegue a recibir la reparación íntegra si cualquiera de los causantes es insolvente, pues bastaría en la solidaridad que fuese solvente alguno de ellos [...][Se ha querido] aumentar la garantía normal del que ha sufrido el daño cuando no ha elegido a quienes se lo han causado, sino que han invadido ilícitamente su esfera de intereses. J. Puig Brutau, *op. cit.*, 3ra ed., 1985, T. II, Vol. 2, págs. 160-161.

En vista de ello, el perjudicado puede dirigirse contra todos los co-causantes del daño simultáneamente o contra cualquiera de ellos, mientras no resulte cobrada la deuda. Art. 1097 del Código Civil. Igualmente, el acreedor puede reclamar la totalidad de la deuda a cualquiera de los deudores o sólo una parte de ésta, coincida o no dicha parte con la que, según la relación

interna, corresponda al deudor reclamado. M. Albaladejo, *op. cit.*, T. XV, Vol. 2, pág. 335.

Claro está, entre los causantes del daño existe un derecho de contribución o nivelación, incorporado en el Art. 1098 del Código Civil, 31 L.P.R.A. sec. 3109, que se activa cuando alguno de éstos ha pagado al perjudicado más de lo que le correspondía pagar, según su grado de negligencia. *Szendrey v. Hospicare, Inc.*, res. el 14 de febrero de 2003, 2003 TSPR 18. De esta manera, se crea una relación interna entre los deudores solidarios mediante la cual cada uno responde únicamente por su negligencia. *Ramos v. Caparra Dairy*, *supra*; F. Soto Nieto, La Responsabilidad Civil Derivada del Ilícito Culposo: vinculaciones solidarias, Madrid, Ed. Montecorvo, S. A., 1982, pág. 49.

Sin embargo, resulta pertinente señalar que la falta de cumplimiento de la obligación por insolvencia de uno de los deudores solidarios tiene que ser suplida por sus codeudores a prorrata de la deuda de cada uno. Art. 1098 del Código Civil. "Por supuesto que en la relación externa, el acreedor tiene derecho al pago por entero, aunque alguno de los deudores sea insolvente, pues cada uno de los solventes es deudor de la totalidad". Puig Brutau, *op. cit.*, pág. 173. Es decir, el acreedor, en ningún caso, se verá perjudicado por la situación de insolvencia, declarada o no, de un deudor solidario. M. Albaladejo, *op. cit.*, T. XV, Vol. 2, págs. 361-362.

Por otro lado, debe quedar claro que todos estos derechos a favor del perjudicado pueden ser renunciados. *Véase Szendrey v. Hospicare, Inc.*, *supra*; H.M. Brau del Toro, <u>Los daños y perjuicios extracontractuales en Puerto Rico</u>, San Juan, Pubs. J.T.S., 1980, Vol. II, pág. 521. Sin embargo, no todo descargo de responsabilidad o desistimiento contra uno de los co-causantes del daño releva a los demás de su obligación para con el demandante. *P.R. Fuels, Inc. v. Empire Gas. Co., Inc.*, 149 D.P.R. 691 (1999); *Merle v. West Bend Co.*, *supra*. En tales casos, la intención de las partes será determinante. *Id.*

En atención a este principio, en *Szendrey v. Hospicare, Inc.*, *supra*, tuvimos la oportunidad de interpretar un contrato de transacción entre los demandantes y uno de los alegados co-causantes de los daños reclamados. En esa ocasión, los demandantes relevaron a dicho demandado de toda y cualquier responsabilidad que éste tuviera o pudiera tener como consecuencia de los hechos que originaron la demanda. Dicho relevo incluyó expresamente cualquier responsabilidad que el demandado pudiera tener para con los demás alegados co-causantes del daño en una acción de nivelación o contribución. Ante la clara intención de los demandantes de asumir la responsabilidad del codeudor contra quien desistían, relevándolo de cualquier deuda, inclusive ante los demás deudores solidarios, resolvimos

que estos últimos no podían repetir contra el codeudor liberado. Debido a ello, aclaramos que la parte correspondiente al grado de contribución del demandado relevado en la ocurrencia de los daños sería restada de la totalidad de la sentencia. De este modo, preservamos la voluntad de las partes de exonerar por completo a dicho demandado mediante la transacción.

En conclusión, el análisis, en última instancia, dependerá de la voluntad de las partes, según ésta se refleje en los términos del contrato de transacción, y en los actos circundantes. *Merle v. West Bend Co.*, *supra*.

Con este marco normativo en mente, evaluemos la transacción objeto de este recurso y las razones que la motivaron.

IV

Según se desprende del contrato de transacción ante nuestra consideración, el cual fue otorgado como parte del proceso de quiebra del Hospital de la Guadalupe, los contratantes tomaron en consideraron como hechos determinantes para su otorgamiento: la existencia de una sentencia millonaria a favor de la señora Blás Toledo que aún no había advenido final y firme; que ésta acumulaba intereses legales a razón de 12% anual; que el Hospital de la Guadalupe figuraba como deudor en la referida sentencia, pues se le fijó su responsabilidad en un 35%, y que, debido al tiempo transcurrido, la suma adeudada por sentencia sobrepasaba los cinco millones de dólares.

Además, en vista de que el Síndico de Quiebras se opuso a las reclamaciones de la señora Blás Toledo, ambas partes consideraron que la litigación de las controversias requeriría una cantidad de tiempo sustancial y causaría gastos significativos que reducirían los fondos disponibles en el caudal. Igualmente, estimaron que una transacción entre ellos podría evitar dicha litigación, removiendo así un obstáculo que impedía la culminación del caso y la distribución final a los acreedores.

En atención a estas circunstancias, el Síndico de Quiebras y la señora Blás Toledo resolvieron culminar con el procedimiento judicial entre ellos, relevando estos últimos al hospital de cualquier deuda o responsabilidad en los siguientes términos:

> 7. In consideration of the terms and conditions of this Agreement, Claimants fully and for ever release and discharge Bankrupt and the Trustee from any and all obligations, actions, suits, causes of action, claims, demands, costs, expenses, damages, losses and liabilities of whatever nature, character and description, in law, equity or otherwise, whether known or unknown, absolute or contingent, direct or indirect, including, but not limited to those they have or might have arising under the laws of Puerto Rico or the United States, and including, but without limitation to, those claims identified above, which Claimants, jointly or individually, ever had, now have, or hereinafter could have against Bankrupt and/or Trustee, by reason of or in connection with any fact, matter, cause or thing whatsoever.

A cambio de este relevo de responsabilidad, la señora Blás Toledo recibió del caudal en quiebra $150,000.00. Sin embargo, se aclaró que:

> 3. Such payment is made by the Trustee in full settlement of Bankrupt´s possible responsibility in excess of the insurance coverage, and said payment shall not, under any circumstances, be considered or construed as made in satisfaction of any insurance claim, or as affecting Claimant´s right to pursue payment of any insurance claim that they may have pending before the Puerto Rico Insurance Guaranty Association.

Según alega el doctor Hidalgo, los términos del contrato aludido son claros en cuanto a que los demás deudores solidarios quedaron igualmente relevados de pagar el restante de la sentencia que le correspondía satisfacer al Hospital de la Guadalupe, o sea, el 35% de la totalidad de la sentencia. Apoya su argumento, esencialmente, en lo resuelto en *Szendrey v. Hospicare, Inc.*, *supra*. No estamos de acuerdo.

Son varias las razones que militan contra la posición asumida por el doctor Hidalgo. En primer lugar, su argumento parte de la premisa errónea de que el Hospital de la Guadalupe le era responsable a la señora Blás Toledo en un 35%. No obstante, y según hemos expuesto en cuanto al ámbito de la responsabilidad solidaria, todos y cada uno de los demandados en este caso son responsables de la totalidad de la sentencia ante la señora Blás Toledo, independientemente del por ciento de responsabilidad de cada uno. Ésta puede dirigirse contra todos o contra cualquiera de ellos por

la totalidad de la deuda o por cualquier parte de ella, mientras no resulte satisfecha la sentencia. De conformidad con lo anterior, el relevo de responsabilidad a favor del Hospital de la Guadalupe no significa que se haya transado un determinado porcentaje de la sentencia, en ausencia de circunstancias que indiquen lo contrario. Sólo significa que la señora Blás Toledo ya no puede ir contra dicho codeudor a cobrar la parte de la sentencia que continúa insatisfecha, incluyendo aquellas cantidades que fueron exclusivamente atribuidas al Hospital de la Guadalupe, como por ejemplo, los honorarios de abogado fijados por su temeridad y los intereses que éstos generaban.

En segundo lugar, de la transacción aludida no se desprende que la señora Blás Toledo haya tenido la intención de renunciar al derecho de cobrar el restante de la sentencia, o cualquier parte de ésta, de los demás deudores solidarios. Mediante la referida transacción, la señora Blás Toledo se limitó a relevar de responsabilidad exclusivamente al Hospital de la Guadalupe y al Síndico de Quiebras, con exclusión de cualquier otra parte. Por tanto, no cabe interpretar dicha renuncia como un abandono amplio de los derechos que nuestro ordenamiento jurídico le reconoce al acreedor de una deuda solidaria.

Si tal fuera el caso, fácil hubiera resultado incorporar al contrato de transacción un relevo amplio mediante términos claros, como ocurrió en *Szendrey v.*

*Hospicare, Inc.*, *supra*, mas no lo hizo. El contrato de transacción en *Szendrey*, de forma patente, estipulaba que los demandantes relevaban al alegado co-causante del daño de:

> toda o cualquier sentencia en su contra que surja o pueda surgir a favor de otras personas, codemandadas o no en la demanda, **como consecuencia de reclamaciones de coparte, de demandas contra tercero o acciones de nivelación o contribución ya instadas o que en el futuro se insten**, contra ellas para resarcirse de condenas impuestales [sic] a favor de las demandantes. (Énfasis nuestro.) *Id*, a las págs. 5-6.

A diferencia de este último caso, aquí la señora Blás Toledo no asumió la responsabilidad del Hospital de la Guadalupe frente a los demás deudores solidarios ante cualquier acción de nivelación o contribución que pudieran iniciar contra éste. Sencillamente, la remisión de la señora Blás Toledo tuvo el limitado alcance de abandonar cualquier derecho que ésta tuviera o pudiera tener contra el mencionado hospital por los hechos alegados en la demanda.[3]

Por otro lado, no podemos perder de perspectiva que este contrato de transacción se otorgó como parte incidental a un proceso de quiebras. Estos acuerdos de transacción han sido reconocidos como un componente inherente a dicho proceso judicial y son favorecidos por

---

[3] Tampoco podemos atribuirle a la mencionada transacción el hecho de que los demás deudores solidarios no puedan ahora nivelar contra el mencionado hospital. Estos debieron haber presentado su reclamación contingente ante la Corte Federal de Quiebras.

el sistema. 10 *Collier on Bankruptcy*, sec. 9019.01; R. Anaya Valencia, *The Sanctity of Settlements and the Significance of Court Approval: Discerning clarity from Bankruptcy Rule 9019*, 78 Or. L. Rev. 425 (1999). Dichos acuerdos deben ser interpretados dentro de este contexto, como herramientas para evitar agotar, mediante la litigación excesiva, los recursos disponibles en el caudal. En este caso, resulta ilustrativa la intención de las partes contratantes de evitar el pleito para no afectar el caudal con los gastos que la referida litigación conllevaba y para culminar con la distribución de lo que podía cobrarse de él.

Además, la referida transacción fue suscrita en el umbral de la insolvencia de uno de los deudores solidarios. Al interpretar sus términos, no podemos abstraernos de las circunstancias que rodearon su otorgamiento y de las disposiciones del ordenamiento jurídico que entraban en juego. Así, por ejemplo, no debemos olvidar que el descargo de la deuda del Hospital de la Guadalupe en el proceso de quiebras no tenía efectos sobre la responsabilidad de los demás deudores solidarios, por lo que esta última se mantenía vigente. 11 USCA sec. 524(e); 4 *Collier on Bankruptcy*, sec. 524.05. Igualmente, la señora Blás Toledo tenía todo el derecho de acudir al proceso de quiebras, recibir la parte que le fuera allí adjudicada y, posteriormente, dirigirse por el balance contra los demás codeudores.

*Cámara Insular Etc. v. Anadón*, 83 D.P.R. 374 (1961); *Christy & Sánchez v. E.L.A.*, 84 D.P.R. 234 (1961). Es decir, el ordenamiento jurídico reconoce que la insolvencia de uno de los deudores solidarios no afecta la acreencia del demandante, pudiendo éste dirigirse contra los demás codeudores, quienes responderán por el restante de la parte adeudada por el insolvente. Art. 1098 del Código Civil. Éstos, en su relación interna, serán responsables de dicha parte a prorrata de sus deudas.

Sin embargo, ninguno de estos derechos fue renunciado, expresa o implícitamente, por la señora Blás Toledo mediante el referido contrato. Por ende, no podemos incorporar materias distintas y ajenas a la intención que motivó dicha transacción.

Conforme con lo anterior, el tribunal de instancia sólo debe reducir del monto de la sentencia la cantidad de $150,000.00 correspondiente a la aludida transacción.

V

Por los fundamentos que anteceden, se revoca la Resolución del antiguo Tribunal de Circuito de Apelaciones en lo que aquí concierne y se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto.

Se dictará Sentencia de conformidad.


Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ivelisse Blás Toledo,
Luis Edgardo Nieves Piñeiro
y la Sociedad Legal de Gananciales
    Recurridos

          v.                          CC-2003-0161  Certiorari

Hospital Nuestra Señora de
la Guadalupe, *et al.*
  Recurrido

José R. Hidalgo y su aseguradora
Insurance Co. of North America
    Peticionarios


SENTENCIA

San Juan, Puerto Rico, a 30 de marzo de 2006.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Resolución del antiguo Tribunal de Circuito de Apelaciones en lo que aquí concierne y se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señores Rebollo López y Fuster Berlingeri no intervinieron.


                         Aida Ileana Oquendo Graulau
                      Secretaria del Tribunal Supremo