La Juez Asociada Señora Rodríguez Rodríguez
emitió la opinión del Tribunal.
En este caso nos corresponde determinar si, mediante un acuerdo transaccional, la parte recurrida puede retener una cantidad de dinero cobrada en exceso a lo adeudado según la sentencia que le favorece.
Pasemos entonces a resumir los hechos que sirven de trasfondo a la controversia ante nuestra consideración.
I
El 26 de julio de 1996 ocurrió un accidente en el que un helicóptero de la Policía de Puerto Rico se estrelló al impactar unas líneas eléctricas que no estaban debidamente marcadas, en las inmediaciones de la represa Carraízo. En el accidente fallecieron tres policías que tripulaban la nave.
A raíz de estos sucesos, se presentaron varias demandas de daños y peijuicios contra la Autoridad de Energía Eléctrica (AEE) y la Autoridad de Acueductos y Alcantarillados (AAA). Además, U.S. Fire Insurance Company (US Fire), aseguradora de la Policía de Puerto Rico, presentó una demanda de subrogación para recuperar los $842,048 pagados por la pérdida del helicóptero.
El 10 de septiembre de 1998, el Tribunal de Primera Instancia declaró “con lugar” las demandas presentadas y ordenó el pago de la cantidad reclamada ($842,048). Además, según lo dispuesto en la Regla 44.1(d) de Procedimiento Civil, 32 L.P.R.A. Ap. III, el tribunal ordenó el pago de honorarios de abogados e intereses por temeridad. También declaró “con lugar” la demanda de subrogación presentada por US Fire.
US Fire solicitó la ejecución de la sentencia dictada a su favor. Para satisfacer la sentencia, la AEE consignó en el tribunal $250,000 y el Sindicato de Aseguradoras de la AEE (Sindicato) consignó $750,000, para un total de $1,000,000. US Fire presentó una moción en la que solicitó el retiro de los fondos. En la moción hizo una reserva ex- *851 presa de derecho por entender que la suma retirada representaba menos de lo que le correspondía por sentencia. Ex-plicó que los intereses sobre la sentencia eran de 9.5% anual, que era la tasa aplicable a litigantes privados. Adujo, además, que debían sumarse a la cantidad que se habría de pagar los honorarios de abogados y las costas del litigio. Según lo anterior, US Fire reclamó la cantidad de $1,588,294.60, como suma adeudada. El Tribunal de Primera Instancia autorizó el retiro de los fondos consignados.
Posteriormente, la aseguradora de la AAA, Zurich Insurance Company (Zurich) y US Fire suscribieron un contrato de transacción. Con éste, Zurich se comprometió a pagar la mitad del principal ($842,048) de la sentencia dictada a favor de US Fire, cantidad que ascendía a $421,000. A cambio, US Fire liberó a Zurich de toda responsabilidad según la póliza que ésta tenía con la AAA. No obstante, se reservó el derecho de continuar su reclamación contra la AAA hasta el pago total de lo adeudado conforme a la sentencia, incluyendo, claro está, los intereses adeudados.
Entretanto, el Tribunal de Primera Instancia emitió una resolución en la cual determinó que la tasa de interés aplicable a la sentencia dictada era 5.25% anual, que es la tasa de interés aplicable a las entidades gubernamentales. De esta resolución US Fire acudió al Tribunal de Apelaciones. Ese tribunal confirmó, esencialmente, la resolución recurrida, aunque modificó la tasa de interés aplicable de 5.25% a 5.5%, por ser la tasa de interés prevaleciente al momento cuando se dictó la sentencia de instancia. Posteriormente, este Tribunal confirmó la determinación del foro intermedio. Gutiérrez v. A.A.A., 167 D.P.R. 130 (2006).
En atención a lo anterior, la AEE presentó ante el Tribunal de Primera Instancia una moción para que se le ordenara a US Fire devolver el dinero retirado en exceso del monto de la sentencia dictada a su favor. En síntesis, alegó que la cantidad total a la cual tenía derecho US Fire, según la sentencia dictada, era $1,262,036.22, que incluía principal más intereses. Por lo tanto, luego de recibir el pago de *852 $1,000,000 y de $421,000, US Fire recibió $158,963.78 en exceso de lo que le correspondía por sentencia. La AEE solicitó la devolución de ese dinero.
US Fire se opuso. Alegó que el pago realizado por Zurich ocurrió como resultado de una transacción contractual y la cantidad pagada fue para comprar el riesgo de que se determinara judicialmente que se debía pagar la tasa de interés aplicable a las entidades privadas. Señaló que, si la controversia sobre la tasa de interés aplicable se hubiera resuelto a favor de US Fire, esta última no hubiese podido reclamar sumas adicionales a Zurich sin violar el acuerdo transaccional. Argüyó que el contrato transaccional se acordó exclusivamente para dar por terminado el litigio entre ambas aseguradoras. Añadió que la AEE no podía pretender que se le acreditara parte del dinero que Zurich pagó a US Fire según el acuerdo transaccional.
El Tribunal de Primera Instancia, mediante resolución emitida el 22 de mayo de 2006, avaló la posición de US Fire y determinó que la devolución de dinero solicitada por la AEE era improcedente. De dicha determinación la AEE y el Sindicato acudieron ante el Tribunal de Apelaciones mediante un recurso de certiorari.
El Tribunal de Apelaciones denegó la expedición del auto. Argüyó en su resolución que no se había distribuido la responsabilidad entre las codemandadas y que tampoco se había determinado la cuantía correspondiente a las costas y los honorarios de abogados, por lo que no era posible determinar si se había pagado en exceso.([1]) Añadió que, en caso de que el reclamo de la AEE tuviera mérito, lo que procedía era una acción de nivelación contra la AAA.
Inconformes, la AEE y el Sindicato acudieron ante nosotros y reiteraron lo planteado ante los foros inferiores. Expedimos el auto solicitado. Ambas partes han comparecido, por lo que pasamos a resolver.
*853 II
Al enfrentarnos a la controversia en este caso, debemos comenzar repasando nuestra normativa respecto la figura del contrato de transacción y sus efectos sobre una reclamación por daños y perjuicios.
A. El Art. 1709 del Código Civil, 31 L.P.R.A. see. 4821, define el contrato de transacción como un acuerdo mediante el cual “las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado”. Este contrato —descrito por Scaevola como un “instrumento de paz alcanzada”— es consensual, recíproco y oneroso. En éste, las partes, mediante sacrificios mutuos, finiquitan una controversia con el propósito de evitar los pesares que conllevaría un litigio. Q.M. Scaevola, Código Civil, Madrid, Ed. Reus, 1953, T. XXVIII, pág. 246. Véanse: Mun. de San Juan v. Prof. Research, 171 D.P.R. 219 (2007); López Tristani v. Maldonado, 168 D.P.R. 838 (2006); Neca Mortgage Corp. v. A & W Dev. S.E., 137 D.P.R. 860 (1995); Citibank v. Dependable Ins. Co., Inc., 121 D.P.R. 503 (1988), y otros casos allí citados.
Hay varios requisitos necesarios para la validez de un contrato de transacción. Primero, se requiere que exista una controversia o relación jurídica incierta —judicial o extrajudicial— que represente la posibilidad de un litigio o que esté ya en contienda. Mun. de San Juan v. Prof. Research, supra. Véase, también, S. Tamayo Haya, El Contrato de Transacción, Madrid, Ed. Thomson Civitas, 2003, pág. 75. La incertidumbre se refiere al concepto subjetivo que tengan las partes sobre los elementos objetivos —ciertos y determinados— de la relación jurídica. Tamayo Haya, op. cit. Segundo, las partes tienen la intención de sustituir, mediante la transacción, esta relación incierta con la seguridad de otra “cierta e incontestable”. Mun. de San Juan v. Prof. Research, supra. El tercer requisito lo representa las concesiones mutuas de las partes. Las con *854 cesiones recíprocas “constituyen no tan sólo el método esencial para el desarrollo de la causa del negocio transaccional, sino que éstas pasan a formar parte de la causa”. López Tristani v. Maldonado, supra, pág. 857. En Mun. de San Juan v. Prof. Research, supra, pág. 239, indicamos, con acierto, que “toda transacción supone que las partes tienen dudas sobre la validez o corrección jurídica de sus respectivas pretensiones y optan por resolver dichas diferencias mediante mutuas concesiones”. (Enfasis en el original.) Véase, además, J. Puig Brutau, Fundamentos de Derecho Civil, 3ra ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. II, págs. 626-630. Véase, también, I. Sierra Gil de la Cuesta, Comentario del Código Civil, Barcelona, Ed. Bosch, 2000, T. 8, págs. 84-90.
Por su naturaleza jurídica compleja, el contrato de transacción debe interpretarse de forma restrictiva por lo que sus efectos se extienden a lo expresamente pactado por las partes. El Código Civil dispone normas interpretativas concretas para las transacciones. La norma que lo disciplina es el Art. 1714 del Código Civil, 31 L.P.R.A. see. 4826, que establece que la transacción “no comprende sino los objetos expresados determinadamente en ella, o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma”. Como resultado, han de entenderse como resueltas con carácter final sólo las cuestiones directamente relacionadas con el objeto transigido, lo que presupone la necesidad de claridad y precisión en la descripción de los asuntos transados. Sierra Gil de la Cuesta, op. cit, T. 8, pág. 105; Sucn. Román v. Shelga Corp., 111 D.P.R. 782 (1981).
El contrato de transacción puede tener lugar en las situaciones cuando intervengan una pluralidad de sujetos, bien del lado activo —varios acreedores— o del lado pasivo —varios deudores— porque exista al mismo tiempo pluralidad de deudores y acreedores. La eficacia de la transacción plantea inconvenientes doctrinales cuando consideramos cuál será el efecto de la transacción concluida entre uno de *855 los deudores y su acreedor, respecto a los otros deudores. Precisamente, este es el asunto que hoy nos ocupa.
B. En materia de la responsabilidad civil extra-contractual, el daño causado puede ser el resultado de la negligencia de más de un causante. En estos casos, cada uno responde por la totalidad del daño causado. Rivera Hernández v. Comtec Comm., 171 D.P.R. 695 (2007); Arroyo v. Hospital La Concepción, 130 D.P.R. 596, 603 (1992); García v. Gobierno de la Capital, 72 D.P.R. 138, 146 (1951); Rivera v. Great Am. Indemnity Co., 70 D.P.R. 825, 828 (1950).
En un pleito por daños y perjuicios, la víctima puede renunciar a su reclamación con respecto a alguno de los cocausantes de su daño mediante un acuerdo de transacción. Dependiendo de lo pactado, así serán los efectos de ese acuerdo sobre el cocausante con quien se transa y los demás cocausantes que permanezcan en el pleito. S.L.G. Szendrey v. Hospicare, Inc., 158 D.P.R. 648, 656 (2003); Blás v. Hospital Guadalupe, 167 D.P.R. 439 (2006). Por lo tanto, para auscultar cuáles son esos efectos es necesario establecer primero qué fue lo que se pactó. 31 L.P.R.A. see. 4826.
Hemos señalado en el pasado que si la víctima del daño releva de responsabilidad a uno de los cocausantes del daño, ello no supone el relevo de responsabilidad de los otros cocausantes si esto último no surge claramente del acuerdo de transacción. Merle v. West Bend Co., 97 D.P.R. 403, 409 (1969); S.L.G. Szendrey v. Hospicare, Inc., supra, pág. 655; Blás v. Hospital Guadalupe, supra. Así pues, la víctima puede continuar su reclamación contra los demás cocausantes del daño. Con lo cual, la responsabilidad de estos cocausantes dependerá, en gran medida, del acuerdo transaccional entre la víctima y el cocausante liberado.
En el acuerdo transaccional, la víctima puede liberar a un cocausante de toda responsabilidad que pueda surgir relacionada con el evento dañoso. Entiéndase que se libera de su responsabilidad tanto hacia la víctima como en la relación interna entre cocausantes. Cuando esto ocurre, la víc *856 tima asume la porción de responsabilidad que se le atribuya al cocausante liberado. Szendrey v. Hospicare Inc., supra, págs. 656-659. En estos casos, los demás cocausantes del daño no podrán recobrar del cocausante liberado cantidad alguna.
Lo anterior responde a que, según este acuerdo transaccional, los demás cocausantes no tendrán disponible una acción de nivelación para recobrar cualquier suma pagada en exceso a la porción de responsabilidad que les corresponda.([2]) La acción de nivelación persigue evitar el enriquecimiento injusto de una parte. Szendrey v. Hospicare, Inc., supra, pág. 654; P.R. Fuels, Inc. v. Empire Gas Co., Inc., 149 D.P.R. 691, 712 — 713 (1999); Ramos v. Caparra Dairy, Inc., 116 D.P.R. 60, 63-64 (1985). Por lo tanto, los demás cocausantes no pueden quedar desprovistos de la acción de nivelación, salvo cuando no estuvieran sujetos a pagar más de lo que les corresponde según sus porciones de responsabilidad. Así, en este contexto, los demás cocausantes no estarán sujetos a resarcir la totalidad de los daños, sino sólo la porción remanente luego de restar el monto correspondiente a la porción de responsabilidad del cocausante liberado. Szendrey v. Hospicare, Inc., supra, pág. 658. Véase, además, D. Fernández Quiñones, Análisis del término 2002-2003 — Tribunal Supremo de Puerto Rico: responsabilidad civil extracontractual, 73 Rev. Jur. U.P.R. 807, 827-830 (2004). Dado que la cantidad que se debe pagar según la sentencia no incluye el monto correspondiente a la porción de responsabilidad del cocausante liberado, la cantidad recibida a cambio del relevo de responsabilidad no se atribuye al pago de la sentencia.
Mediante este tipo de acuerdo de transacción, se elimina la incertidumbre de lo que en su día el demandante tendrá derecho a recobrar según la porción de responsabilidad que se le atribuya al cocausante liberado. L.R. Rivera Rivera, El *857 Contrato de Transacción, sus efectos en situaciones de solidaridad, San Juan, Jurídica Editores, 1998, pág. 36. Dicha cantidad queda establecida en el acuerdo de transacción. Por lo tanto, el demandante sólo tendrá el derecho a recibir la cantidad establecida en el acuerdo de transacción como pago del monto correspondiente a la porción de responsabilidad de ese cocausante. Así, asume el riesgo de recobrar menos de lo que en su día se determine por sentencia.
Como corolario de lo anterior, en caso de que conforme a la sentencia dictada el monto correspondiente a la porción de responsabilidad del cocausante liberado sea mayor a lo recibido a cambio del relevo de responsabilidad, el demandante asume la merma. Por el contrario, si dicho monto es menor a lo recibido a cambio del relevo de responsabilidad, el demandante percibe la ganancia.
Por otra parte, el acuerdo transaccional se puede circunscribir a que el demandante renuncie a una acción de daños y perjuicios en contra de uno de los cocausantes, sin más. Este tipo de transacción no impide que la víctima continúe la demanda contra los demás cocausantes de su daño, esperando recobrar de éstos hasta la totalidad del monto correspondiente a los daños causados. Véase Blás v. Hospital Guadalupe, supra. En caso de que para satisfacer la sentencia que advenga en su día, los demás cocausantes tengan que pagar una suma en exceso a la porción de responsabilidad que les corresponda para compensar la porción de responsabilidad del cocausante liberado, éstos tendrán disponible la acción de nivelación correspondiente. Blás v. Hospital Guadalupe, supra, pág. 456 esc. 3.
En este contexto, la cantidad recibida por el demandante, según el acuerdo transaccional, sí se considera un pago parcial de la sentencia que recaiga. Blás v. Hospital Guadalupe, supra, pág. 458 (“el tribunal de instancia sólo debe reducir del monto de la sentencia la cantidad ... correspondiente a la aludida transacción”). De lo contrario, el demandante podría recobrar la totalidad del monto de la sen *858 tencia, además de lo obtenido mediante el acuerdo transaccional sin haber asumido ningún riesgo.
Lo anterior constituiría un enriquecimiento injusto.([3]) Esto, pues los demandados estarían sujetos a resarcir una suma mayor al monto correspondiente a los daños causados, lo que se traduce en un empobrecimiento. A su vez, el demandante cobraría una suma mayor al monto correspondiente a los daños sufridos y, por lo tanto, experimentaría un enriquecimiento. Al no haber asumido ningún riesgo, sería un enriquecimiento sin causa.
A la luz del marco normativo expuesto, resolve-mos que un demandante que suscribe un acuerdo transaccional con uno de los codemandados y termina recibiendo en total una cantidad mayor a lo que le corresponde, según la sentencia dictada a su favor, podrá percibir dicha ganancia, dependiendo de lo pactado en el acuerdo transaccional. Así, siempre que en el acuerdo de transacción éste asuma la porción de responsabilidad que se le impute al cocausante liberado, por lo que asume a su vez el riesgo de recobrar menos de lo que en su día se determine por sentencia, éste podrá atribuirse la ganancia. Si por el contrario, el demandante no asume la porción de responsabilidad que se le impute al cocausante liberado y, por lo tanto, tampoco asume el riesgo de recobrar menos de lo que en su día se determine por sentencia, éste sólo tendrá derecho a recobrar exclusivamente lo que le corresponda según la sentencia.
III
Según lo anterior, para resolver el caso que nos ocupa debemos establecer cuál fue el acuerdo recogido en el con *859 trato transaccional suscrito entre US Fire y Zurich, y determinar así los efectos de esta transacción en este proceso judicial.
En el acuerdo transaccional suscrito por US Fire y Zurich se estipuló, en lo pertinente, que: (1) Zurich emitió a favor de la AAA una póliza que cubre parte de la responsabilidad por la pérdida del helicóptero propiedad de la Policía de Puerto Rico; (2) según las cláusulas del contrato de seguro, Zurich estaba obligada a reembolsarle a su asegurada las cantidades cubiertas según la póliza para el pago del principal de la sentencia que favorece a US Fire; (3) que conforme a la letra de la póliza, Zurich no está obligada a pagar intereses sobre la sentencia, sean estos pre o post sentencia; (4) a cambio del pago de $421,000, US Fire libera a Zurich de toda responsabilidad según la póliza de referencia, y (5) que expresamente, Zurich reconoce el derecho de US Fire a continuar su reclamación contra la AAA y laAEE, y sus demás aseguradoras hasta el pago total de lo adeudado conforme a la sentencia que le favorece.
Surge de lo anterior que Zurich se comprometió a pagar parte del principal de la sentencia, pues se estipuló que esa era la responsabilidad que le correspondía según la póliza emitida a favor de su asegurada, la AAA. A cambio, US Fire liberó a Zurich de toda responsabilidad según la póliza. Es decir; US Fire obtuvo $421,000 por lo que Zurich estaría obligado a pagar, según lo establecido en la póliza suscrita a favor de la AAA, nada más.
En el acuerdo transaccional también se reconoce expresamente el derecho de US Fire a continuar su reclamación contra la AAA y la AEE y sus demás aseguradoras, hasta el pago total de lo adeudado conforme a la sentencia que le favorece. Por lo tanto, queda claro que mediante esa transacción, US Fire no liberó de responsabilidad a las demás partes demandadas, así como tampoco limitó la responsabilidad de los demás demandados a la porción remanente, luego de restar el monto correspondiente a la porción de responsabilidad de la codemandada liberada.
*860 Tampoco surge del acuerdo que US Fire liberara a Zurich de toda responsabilidad que pudiera surgir en relación con ese evento. Por lo tanto, no la liberó de responsabilidad en la relación interna entre cocausantes. Consecuentemente, los demás demandados conservan su derecho a nivelar.
En conclusión, según este acuerdo transaccional US Fire no asumió la responsabilidad de Zurich. El dinero recibido mediante dicho acuerdo no constituyó un pago por asumir la responsabilidad de esta codemandada. Siendo así, US Fire no puede beneficiarse de este acuerdo transaccional para obtener un beneficio monetario mayor al que tiene derecho, según la sentencia que le favorece. Como ex-plicamos, este beneficio se obtiene sólo si el demandante asume la porción de responsabilidad que se atribuya al cocausante liberado y asimismo, asume el riesgo de recobrar menos de lo que la sentencia que se dicte en su día disponga.
Según lo expuesto, US Fire sólo puede cobrar el total de lo adeudado mediante la sentencia que le favorece, nada más. Conforme con ello, el pago realizado por el acuerdo transaccional constituye un pago parcial de la sentencia.
IV
Ambas partes alegan que la cantidad total a la cual tiene derecho US Fire, según la sentencia dictada a su favor, es $1,262,036.22. No obstante, US Fire recibió un total de $1,421,000. Por lo tanto, le corresponde devolver la cantidad de $158,963.78, más los intereses devengados desde que recibió el pago de Zurich, que es el momento cuando quedó satisfecha la sentencia.
En este caso, el Tribunal de Primera Instancia no precisó en su sentencia las porciones de responsabilidad atribuibles a la AEE y a la AAA. Cuando no media una determinación judicial de la porción exacta de culpa de los cocausantes o cuando el efecto dañoso de la actuación de los cocausantes no es susceptible de ser medido, procede “la im *861 posición de responsabilidad solidaria en cuotas contributivas iguales”.([4]) Sánchez Rodríguez v. López Jiménez, 118 D.P.R. 701, 710 esc. 2 (1987). Véase Torres Ortiz v. E.L.A., 136 D.P.R. 556, 567 esc. 6 (1994). Véase, también, el Art. 1091 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3102. Por lo tanto, en esta etapa procesal, debemos inferir que la AEE y la AAA responden por partes iguales.([5])
US Fire recibió de Zurich, aseguradora de la AAA, sólo $421,000. La AEE, al ser deudora solidaria, responde no sólo por la mitad que le corresponde, sino también por la cantidad que falta para satisfacer la sentencia en su totalidad, que según las partes asciende a $1,262,036.22. Siendo así, US Fire tenía el derecho a cobrar de la AEE un total de $841,036.22. No obstante, la AEE consignó un total de $1,000,000. Es decir, la AEE pagó $158,963.78 en exceso de lo adeudado según la sentencia. Por lo tanto, corresponde a la AEE recibir la cantidad de US Fire, más los intereses devengados desde el momento cuando quedó satisfecha la sentencia.
Conforme a lo anterior, se revoca la resolución del Tribunal de Apelaciones que denegó la expedición del auto de “certiorari” y mantuvo lo resuelto por el Tribunal de Primera Instancia. Se ordena a US Fire la devolución a la AEE de $158,963.78, más los intereses devengados.

Se dictará sentencia de conformidad.

La Jueza Asociada señora Fiol Matta concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rivera Pérez se inhibió.

(1) Debemos aclarar que contrario a lo expresado por el Tribunal de Apelaciones, el foro de instancia indicó que la cuantía correspondiente a los honorarios de abogados era de $5,000.

(2) Respecto a la acción de nivelación, el Art. 1098 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3109, establece que el deudor solidario que hizo el pago sólo puede reclamar de sus codeudores la parte que corresponda a cada uno. Véase esc. 3.

(3) La doctrina de enriquecimiento injusto responde a los principios de equidad y justicia. E.L.A. v. Cole, 164 D.P.R. 608 (2005); Silva v. Comisión Industrial, 91 D.P.R. 891, 898 (1965). Los requisitos básicos de esta doctrina son: (1) existencia de un enriquecimiento; (2) un empobrecimiento correlativo; (3) una conexión entre dicho empobrecimiento y enriquecimiento; (4) la falta de una causa que justifique el enriquecimiento, y (5) la inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. E.L.A. v. Cole, supra; Ortiz Andújar v. E.L.A., 122 D.P.R. 817, 823 (1988).

(4) Ello no impide que ante la ausencia de una determinación judicial de la porción exacta de culpa de los cocausantes, los litigantes soliciten dicha determinación mediante los mecanismos procesales disponibles.

(5) Cabe señalar que, en este caso, el 19 de septiembre de 2006, el foro primario dictó sentencia sumaria parcial en la que declaró “con lugar” una demanda contra coparte presentada por la AEE contra la AAA, para recobrar la mitad de los intereses pagados para satisfacer la sentencia. Allí, el foro primario, interpretando la sentencia dictada el 10 de septiembre de 1998, indicó expresamente que la responsabilidad de la AEE y la AAA era por partes iguales.