Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| HERMINIO HIRAM DÍAZ CORTÉS Y YULIMAR QUILES JUARBE<br><br>Apelante<br><br>v.<br><br>ÁNGEL J. CRUZ GONZÁLEZ; MAYRA D. PÉREZ NIEVES, LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Apelado | TA2025AP00479 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm.: AG2023CV02097<br><br>Sobre: Incumplimiento de Contrato; Cumplimiento Específico; Daños y Perjuicios; y Sentencia Declaratoria |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de enero de 2026.

Comparecen Herminio Hiram Díaz Cortés y Julymar Quiles Juarbe (en conjunto, parte apelante) mediante un recurso de apelación, para solicitarnos la revisión de una *Sentencia* emitida el 18 de septiembre de 2025 y notificada el día 24 del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla.[1] Mediante la *Sentencia* apelada, el foro de instancia desestimó la Demanda incoada.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

I

El caso de marras tuvo su inicio cuando, el 22 de diciembre de 2023, la parte apelante presentó una *Demanda* por

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 116.

incumplimiento de contrato, cumplimiento específico y otros, contra el señor Ángel J. Cruz González, la señora Mayra D. Pérez Nieves y la Sociedad Legal de Gananciales compuesta por ambos (en adelante Matrimonio Cruz-Pérez o parte apelada).[2] Adujo que, entre las partes, el 1 de marzo de 2018, se otorgó un contrato de opción a compra en relación a una propiedad sita en Aguadilla, en la cual la parte apelante fungía como el optante, mientras que el Matrimonio Cruz-Pérez figuraba como el optatario. Alegó que el Matrimonio Cruz-Pérez incumplió con las cláusulas contractuales según pactadas, ya que al momento que se decidió ejercer la opción, este aplazó la transacción. Añadió que, existieron contratos verbales entre las partes que tuvieron el efecto de novar el contrato de opción otorgado. A tenor, solicitó al foro primario que ordenara el cumplimiento específico de lo pactado para que se elevara a escritura pública el negocio de compraventa sobre la propiedad en disputa. Asimismo, peticionó que se declarara *Ha Lugar* la reclamación por daños y perjuicios, condenando al matrimonio Cruz-Pérez al pago de treinta mil dólares ($30,000.00), más el pago de gastos y costas de honorarios de abogado.

En respuesta, el 8 de marzo de 2024, el Matrimonio Cruz-Pérez presentó su *Contestación a demanda*.[3] En la misma, aceptó algunas de las alegaciones esbozadas por la parte apelante y negó otras. Adujo que, entre las partes, se suscribió un contrato bilateral de opción con pleno conocimiento de lo acordado, y que la parte apelante incumplió con realizar la opción según acordada. Por lo cual, enfatizó que no le asistía la razón a la parte apelante. A tenor, solicitó al foro primario que desestimara la demanda de epígrafe.

---

[2] SUMAC TPI, a la Entrada Núm. 1.
[3] *Íd.,* a la Entrada Núm. 15.

Posteriormente, el 18 de noviembre de 2024, se presentó el *Informe conjunto sobre conferencia con antelación al juicio*.[4] La vista sobre conferencia con antelación a juicio fue celebrada en esa misma fecha.[5]

Tiempo después, el 5 de agosto de 2025, la parte apelante presentó una *Moción en solicitud que se dicte sentencia parcial*.[6] En la precitada moción, la parte apelante solicitó al foro primario que aceptara como probadas todas las alegaciones que enumeró en su escrito. Estas alegaciones consistieron en las contenidas en la demanda, que luego fueron aceptadas en la contestación a demanda. A tenor, solicitó al foro primario que declarase *Ha Lugar* la solicitud y dictara sentencia parcial junto a cualquier pronunciamiento que en derecho procediera, tomando conocimiento de las alegaciones. A tales efectos, el 6 de agosto de 2025, el foro primario emitió una *Orden* mediante la cual dispuso que la solicitud sería discutida el día del juicio.[7]

Conviene mencionar que, previo a la fecha del juicio, el 6 de agosto de 2025, la parte apelante cargó al SUMAC TPI la prueba que consideraban utilizar durante la vista en su fondo.[8] Luego, el 11 de agosto de 2025, se celebró el juicio en su fondo.[9] Durante el juicio, el foro de instancia recibió prueba testimonial y documental. Por la parte apelante, atestiguó el señor Herminio Díaz Cortés. Por otro lado, de la parte apelada, se presentó el testimonio del señor Ángel J. Cruz González. La prueba documental recibida consistió en dos (2) exhibit por estipulación,[10] y un (1) exhibit de la parte apelante.[11]

---

[4] SUMAC TPI, a la Entrada Núm. 60.

[5] *Íd.,* a la Entrada Núm. 62.

[6] *Íd.,* a la Entrada Núm. 104.

[7] *Íd.,* a la Entrada Núm. 106.

[8] *Íd.,* a la Entrada Núm. 109.

[9] *Íd.,* a la Entrada Núm. 112.

[10] *Íd.,* a la Entrada Núm. 112 y su anejo; Véase, además, SUMAC TPI, a la Entrada Núm. 109, Anejos 1 y 2. La prueba documental estipulada por las partes consistió de: (i) Exhibit I: Contrato de opción a compra, y (ii) Exhibit II: Contrato de Arrendamiento.

[11] SUMAC TPI, a la Entrada Núm. 112 y su anejo; Véase, además, SUMAC TPI, a la Entrada Núm. 109, Anejo 6. La prueba documental de la parte apelante

Celebrado el juicio, el 18 de septiembre de 2025, notificada el día 24 del mismo mes y año, el foro de instancia emitió la *Sentencia* objeto la apelación ante nos.[12] Mediante la *Sentencia* apelada, el tribunal *a quo* desestimó la demanda de autos.

De la *Sentencia* apelada se desprende que las partes estipularon como hechos probados los siguientes ocho (8):

1. Se estipula que las partes del pleito son las partes del caso.

2. La residencia en cuestión es la misma.

3. La existencia de un contrato de opción de compraventa.

4. La parte demandada le envió a la parte demandante un proyecto de contrato de arrendamiento nuevo con posterioridad al vencimiento del contrato original suscrito por el Lcdo. Pedro García Morell.

5. Contrato de Opción de Compra.

6. Contrato nuevo de alquiler.

7. Las partes se conocen por más de 20 años.

8. La parte demandante le ha estado pagando a la parte demandada la suma mensual de $1,309.90.[13]

Por otro lado, el foro de instancia esgrimió las siguientes diez (10) determinaciones de hechos como producto del juicio celebrado:

9. El demandante interesaba arrendar un negocio de *car wash* propiedad del demandado en el pueblo de Aguadilla.

10. Para poder adquirir el negocio, el codemandado Ángel Cruz le ofreció venderle un inmueble residencial en el Barrio Camaseyes de Aguadilla, y así pudiera mudarse a Aguadilla.

11. El 1 de marzo de 2018[,] las partes otorgaron contrato de opción de compra en el cual el demandado le concedía un término de dos años al demandante para que pudiera ejercer su derecho de opción.

12. El demandante estuvo ocupando la propiedad desde junio de 2017 y continuó ocupando la misma luego de firmar el contrato de opción el 1 de marzo de 2018.[14]

---

consistió de: (i) Exhibit 1– copia de la factura #52 con fecha de 28 de mayo de 2018 de Joel Crespo Vázquez Construction.
[12] SUMAC TPI, a la Entrada Núm. 116.
[13] *Íd.*
[14] *Íd.*

13. Las partes acordaron que el demandante ocuparía la propiedad y continuaría pagando la hipoteca por la cantidad de $1,305.90 mensuales.

14. La parte demandante realizó arreglos a la propiedad luego del paso del Huracán María, aun cuando el acápite séptimo establece que estos quedarían a beneficio del vendedor, sin obligación de éste de pagar al optante[.]

15. La parte demandante realizó los pagos tal y como expresa el contrato de opción.

16. La cláusula decimocuarta del contrato establece que ese es el único acuerdo entre las partes y que ningún otro acuerdo verbal o de otra índole, por parte de la vendedora o compradora, que no esté incluido en el mismo, tendrá fuerza o efecto alguno.

17. No surge de la prueba testifical ni documental que el optante (parte demandante) haya realizado acto afirmativo alguno para ejercer la opción de compra dentro del término de 24 meses que estipula el contrato, al no expresarle al demandado, ni verbal ni por escrito, su intención de ejercer la opción de compra.

18. No se solicitó prórroga, ni se otorgó contrato alguno que extendiera la prórroga concedida al demandante.[15]

En la *Sentencia*, el foro primario concluyó que no se configuró el incumplimiento de contrato alegado por el parte apelante, puesto a que el Matrimonio Cruz-Pérez cumplió con el contrato otorgado al mantener el inmueble objeto de controversia fuera del mercado, en espera de que los demandantes ejercieran la opción de compra a la cual tenían derecho. Concluyó, además, que la parte apelante nunca ejerció su derecho a opción conforme a lo acordado.

En desacuerdo con la determinación del foro primario, el 24 de octubre de 2025, compareció ante esta Curia la parte apelante mediante un recurso de *Apelación*, en el cual esgrimió la comisión del siguiente error:

Cometió error manifiesto el tribunal de primera instancia al desestimar la demanda al aplicar erróneamente el derecho contractual y los principios de buena fe, lo cual constituye un error de derecho y

---

[15] SUMAC TPI, a la Entrada Núm. 116.

de interpretación literal contractual de los contratos, al concluir que la parte apelante incumplió con su obligación de ejercer la opción de compraventa dentro del término pactado, y al no determinar que la imposibilidad de cumplimiento con la opción fue causada por la mala fe, las omisiones y la obstrucción de la parte demandada y apelada y no permitir al abogado del demandante contrainterrogar efectivamente sobre materias que se derivaban razonablemente del directo del testimonio del demandado para impugnar la credibilidad del testigo y las alegaciones de la contestación a demanda y testimonio en sala en violación al debido proceso de ley evidenciario.

El 17 de noviembre de 2025, compareció la parte apelante para presentar la transcripción de la prueba oral (TPO). Al día siguiente, emitimos una *Resolución* en la cual concedimos al Matrimonio Cruz-Pérez hasta el 1 de diciembre de 2025 para presentar sus objeciones y/o estipulación a dicha transcripción. Igual término le concedimos a la parte apelante para informar si se presentaría un alegato suplementario.

El 1 de diciembre de 2025, la parte apelante presentó *Moción en cumplimiento de orden*, en la cual informó que presentaría un alegato suplementario. Sin embargo, superado el término concedido al Matrimonio Cruz-Pérez para presentar sus objeciones a la TPO sin haberlo hecho, mediante *Resolución*, emitida el 2 de diciembre de 2025, acogimos la misma como estipulada y concedimos a la parte apelante hasta el 17 de diciembre de 2025, para presentar su alegato suplementario. De igual forma, advertimos a la parte apelada que contaría con treinta (30) días, a partir de la presentación del antedicho escrito, para presentar el correspondiente alegato en oposición. En cumplimiento con lo ordenado, el 17 de diciembre de 2025, compareció la parte apelante par para presentar su alegato suplementario. Por su parte, el 16 de enero de 2026, compareció la parte apelada mediante *Alegato en oposición a apelación*. Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso instado.

II

### A. Teoría General de los Contratos

Bajo nuestro crisol doctrinario, "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en [los] que intervenga cualquier género de culpa o negligencia".[16] Particularmente, las obligaciones contractuales tienen fuerza de ley entre las partes y deben cumplirse según lo pactado.[17] Ahora bien, en nuestro ordenamiento jurídico rige el principio de libertad de contratación.[18] De manera que, los contratantes tienen la facultad de establecer los pactos, condiciones y cláusulas que le sean más convenientes, siempre y cuando no sean contrarios a las leyes, a la moral y al orden público.[19]

Para que se considere que existe un contrato se requiere que concurran tres (3) requisitos: (i) consentimiento de los contratantes; (ii) un objeto cierto que sea materia del contrato, y (iii) la causa de la obligación que se establezca.[20] Una vez perfeccionado un contrato, las partes que lo suscriben están sujetas a hacer valer el cumplimiento de lo pactado y a todas las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley.[21] Entiéndase, que el principio de la obligatoriedad de los contratos está estrechamente vinculado con la buena fe de los contratantes.[22]

Desde el momento en que las partes perfeccionan con el mero consentimiento un contrato, cada una viene obligada no solo a cumplir con lo expresamente pactado, sino también con las consecuencias que, según su naturaleza, sean conformes a la buena

---

[16] Artículo 1042 del Código Civil de Puerto Rico, Edición de 1930 (Código Civil de 1930), 31 LPRA sec. 2992. El referido código fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado, por ser la ley vigente y aplicable a la controversia que nos ocupa.

[17] Artículo 1044 del Código Civil de 1930, *supra*, 31 LPRA sec. 2994 (derogado).

[18] *Oriental Financial v. Nieves*, 172 DPR 462, 470 (2007).

[19] Artículo 1207 del Código Civil de 1930, *supra*, 31 LPRA sec. 3372 (derogado); *Blanco Matos v. Colón Mulero*, 200 DPR 398, 408 (2018).

[20] Artículo 1213 del Código Civil de 1930, *supra* 31 LPRA sec. 3391 (derogado).

[21] Artículo 1210 del Código Civil de 1930, *supra*, 31 LPRA sec. 3375 (derogado).

[22] *Unysis v. Ramallo Brothers*, 128 DPR 842, 852 (1991).

fe, al uso y a la ley.[23] Por consiguiente, la validez y el cumplimiento de los contratos no puede dejarse al arbitrio de una de las partes.[24]

Como corolario de lo antes expuesto, el Código Civil de 1930, hoy derogado, dispone en su Artículo 1233 que "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas".[25] Asimismo, establece que "[s]i las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquellas".[26] En ese aspecto, cuando los términos de un contrato, sus condiciones y exclusiones, son claros y específicos, no dando margen a ambigüedades u otras interpretaciones, así deben aplicarse.[27] En adición, los tribunales se deben limitar a interpretar los contratos en los casos en los que esto sea estrictamente necesario.[28] Así, pues, si un contrato es claro, presupone concordar la letra contractual con la intención de las partes.[29]

Cónsono con lo anterior, es harto conocido que en nuestra jurisdicción impera la teoría de la subjetividad en la interpretación de los contratos, la cual implica el indagar cuál fue la voluntad real de las partes con el propósito de que esta prevalezca.[30] La intención de las partes será el criterio fundamental para fijar el alcance de las obligaciones contractuales.[31] Al momento de analizar la intención de los contratantes, los tribunales deben atender, no solo los actos anteriores, coetáneos y posteriores al contrato, sino también las circunstancias indicativas de la voluntad de las partes.[32] La

---

[23] Artículo 1210 del Código Civil de 1930, *supra* (derogado); *Unysis v. Ramallo Brothers*, supra, a la pág. 852.
[24] Artículo 1208 del Código Civil de 1930, *supra,* 31 LPRA sec. 3373 (derogado); *Unysis v. Ramallo Brothers*, supra, a la pág. 852.
[25] Artículo 1233 del Código de 1930, *supra,* 31 LPRA sec. 3471 (derogado).
[26] *Íd.*
[27] *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 212 (2006); *Unysis v. Ramallo Brothers*, supra, a la pág. 852.
[28] *Marcial Burgos v. Tomé*, 144 DPR 522, 537 (1997).
[29] *Íd.*
[30] *Marcial Burgos v. Tomé*, supra, a la pág. 537.
[31] *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 DPR 64, 69 (1983).
[32] Artículo 1234 del Código Civil de 1930, 31 LPRA sec. 3472 (derogado); *Blas v. Hosp. Guadalupe*, 167 DPR 439, 451 (2006).

interpretación final debe ser cónsona con el principio de la buena fe y no llevar a resultados incorrectos, absurdos e injustos para las partes.[33]

Es menester apuntalar que, si se quebrantan las obligaciones pactadas mediante un contrato, la parte afectada podrá incoar una acción por incumplimiento contractual.[34] Mediante esta acción *ex contractu,* se podrá solicitar el resarcimiento de los daños que emanen del quebrantamiento de los deberes convenidos.[35] Empero, para que proceda esta acción, debe existir un pacto el cual haya generado tanto una obligación, así como una expectativa en virtud de la cual actuaron las partes.[36] Además, será necesario que la parte afectada demuestre la existencia de un nexo causal entre el incumplimiento contractual y el daño reclamado.[37] Ahora bien, la acción por incumplimiento contractual debe presentarte antes de que expire el término prescriptivo de quince (15) años.[38] De lo contrario, la parte afectada por incumplimiento contractual estará impedida de solicitar el resarcimiento de los daños.

### B. El contrato de Opción a Compra

En lo que al recurso ante nos respecta, conviene mencionar que, por un tiempo, el contrato de opción a compra se regía por vía de jurisprudencia, toda vez que el derogado Código Civil de 1930 no contenía disposiciones al respecto. No obstante, lo anterior, el nuevo Código Civil de 2020 recogió la normativa desarrollada a través de la jurisprudencia con relación a este tipo de contratos. Por ello, pese a que en el presente caso aplica el Código Civil de 1930, debido a que el contrato entre las partes del título se efectuó en 1 de marzo de 2018, haremos referencia tanto a la jurisprudencia interpretativa

---

[33] *Guadalupe Solis v. González Durieux,* 172 DPR 676, 684-685 (2007).
[34] *Cruz Cruz v. Casa Bella Corp.,* 213 DPR 980, 998 (2024).
[35] *Soc. de Gananciales v. Vélez & Asoc,* 145 DPR 508, 521 (1998).
[36] *Álvarez v. Rivera,* 165 DPR 1, 18 (2005).
[37] *Cruz Cruz v. Casa Bella Corp.,* supra, a la pág. 999.
[38] *Ramos Lozada v. Orientalist Rattan Furniture Inc,* 130 DPR 712, 722 (1992).

como al Código Civil de 2020, para una mejor compresión del derecho aplicable.

Establecido lo anterior, puntualizamos que el Código Civil de 2020 define este tipo de contrato como "el derecho que faculta a su titular para que decida durante un plazo determinado, mediante la manifestación de su aceptación, el perfeccionamiento del contrato de compraventa que ha sido ya acordado en todos sus aspectos fundamentales y secundarios y a cuyo cumplimiento se mantiene comprometido el concedente durante el plazo prefijado".[39] En otras palabras, es "un contrato consensual, mediante el cual una parte (promitente) le concede a otra parte (optante) el derecho exclusivo a decidir de manera unilateral si comprará determinado bien inmueble que le pertenece al promitente".[40] Es menester enfatizar que el contrato de opción, por ser de naturaleza transitoria, puede ser principal o un pacto accesorio a otro, como, por ejemplo, un contrato de compraventa, sociedad, financiamiento o arrendamiento de cosas y servicios.[41]

Los elementos esenciales de este tipo de contrato son los siguientes: (1) la facultad del optante de decidir unilateralmente si celebrará el contrato principal sin ninguna obligación de su parte; (2) que la concesión sea exclusiva; (3) un plazo para ejercitar la opción y, por último, (4) la voluntad del optante como única condición.[42]

Por otro lado, el derecho de opción tiene algunos requisitos para su título de constitución.[43] Primeramente, debe contener las estipulaciones y el domicilio a efectos de las notificaciones preceptivas y demás pactos que el constituyente o los constituyentes

---

[39] Artículo 1029 del Código Civil de 2020, *supra,* 31 LPRA sec. 8821.
[40] *S.L.G. Irizarry v S.L.G. García,* 155 DPR 713, 722 (2001).
[41] *Mayagüez Hilton Corp. v. Betancourt,* 156 DPR 234, 250 (2002).
[42] *S.L.G. Irizarry v. S.L.G. García*, supra, a la pág. 722.
[43] Artículo 1030 del Código Civil de 2020, *supra,* 31 LPRA sec. 8822.

tengan por conveniente.[44] Asimismo, debe contener: (i) el plazo de duración del derecho y, si procede, el plazo para su ejercicio; (ii) en su caso, la voluntad del constituyente o de los constituyentes de configurar el derecho con carácter real; (iii) el precio o contraprestación para la adquisición del bien o los criterios para su fijación, cuando se trate de un derecho de opción a una adquisición onerosa, indicando el precio estipulado para su adquisición; (iv) cuando se prevean cláusulas de estabilización, debe contener criterios objetivos y el precio debe poder fijarse con una simple operación aritmética, y (v) la prima pactada para su constitución, cuando el derecho se constituye a título oneroso, indicando el precio convenido.[45] Cumplidos los requisitos antes mencionados, el de opción de compra se puede inscribir, siempre cuando conste en escritura pública .[46]

Precisa acentuar que será indispensable que el optante notifique al optatario su voluntad de perfeccionar el contrato aceptado.[47] Ello, puesto a que, si se deja transcurrir el plazo concedido para optar, sin hacer ninguna manifestación o haciendo alguna que tenga la eficacia de una renuncia del derecho, el derecho de opción quedará extinguido.[48]

### C. La Apreciación de la Prueba y Deferencia Judicial

Como es sabido, tanto el ejercicio discrecional que efectúa el Tribunal de Primera Instancia de apreciación de la prueba como las determinaciones de hecho que esgrime están revestidas de confiabilidad y merecen gran deferencia.[49] Ello, toda vez que es el foro primario quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no

---

[44] Artículo 1030 del Código Civil de 2020, *supra.*
[45] *Íd.*
[46] *Íd.*
[47] *S.L.G. Irizarry v. S.L.G. García*, supra, a la pág. 722.
[48] *Íd.*
[49] *Trinidad v. Chade,* 153 DPR 280, 291 (2001), citando a *Pueblo v. Torres Rivera,* 137 DPR 630 (1994).

verbales.[50] Esto, al contrario del Tribunal de Apelaciones, quien cuenta únicamente con "récords mudos e inexpresivos.[51] Así, pues, en nuestro sistema de justicia, la discreción judicial permea la evaluación de la prueba presentada en los casos y controversias.[52]

Por lo anterior, conviene mencionar que las decisiones discrecionales que toma el foro primario no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[53] Un tribunal de justicia incurre en un abuso de discreción cuando el juez, sin fundamento para ello: (i) no toma en cuenta e ignora en la decisión que emite un hecho material importante que no podía ser pasado por alto; (ii) concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o (iii) no toma en cuenta todos los hechos materiales e importantes, descarta los relevantes, así como los sopesa y calibra livianamente.[54]

Como corolario de lo anterior, nuestro Tribunal Supremo ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[55] Se ha determinado que un juzgador incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala, e incluso antes de que se someta prueba alguna.[56] Con relación al error manifiesto, un

---

[50] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013).

[51] *S.L.G. Rivera Carrasquillo v. A.A.A*, 177 DPR 345, 356 (2009); *Trinidad v. Chade*, supra, a la pág. 291.

[52] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011).

[53] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).

[54] *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009).

[55] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994); *Rivera Pérez v. Cruz Corchado*, 119 DPR 8, 14 (1987); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

[56] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).

juzgador incurre en este cuando, de un análisis de la totalidad de la evidencia, este Tribunal de Apelaciones queda convencido de que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.[57] Igualmente, se podrá intervenir con la determinación del tribunal de instancia cuando la valoración de la prueba se aparte de la realidad fáctica o resulte inherentemente imposible o increíble.[58]

No obstante, lo anterior, cabe destacar que, el Alto Foro ha resuelto que, en instancias en las cuales las determinaciones de hecho que realice el foro primario estén basadas en prueba pericial o documental, el tribunal revisor estará en la misma posición para revisar la prueba.[59] Por tanto, en dichas instancias, este tribunal apelativo "tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta".[60]

Huelga señalar que, aunque según vimos, la apreciación de la prueba no está exenta de toda revisión, si la actuación del tribunal de instancia no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio de este foro, que es a quien corresponde la dirección del proceso.[61] Por ende, los foros apelativos solo podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que de esta surjan serias dudas, razonables y fundadas. Ahora bien, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo.[62]

---

[57] *Dávila Nieves v. Meléndez Marín,* supra*,* a la pág. 772.
[58] *Santiago Ortiz v. Real Legacy et al.*, supra*,* a la pág. 219; *González Hernández v. González Hernández*, supra*,* a la pág. 777.
[59] *Santiago Ortiz v. Real Legacy et al.*, supra*,* a la pág. 219.
[60] *Santiago Ortiz v. Real Legacy et al.*, supra*,* a la pág. 219*; Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 363 (2001); *Prieto v. Mary land Casualty Co.*, 98 DPR 594, 623 (1970).
[61] S*ierra v. Tribunal Superior*, supra*,* a la pág. 572.
[62] *Rivera Pérez v. Cruz Corchado*, supra*,* a la pág. 14.

### D. La Suficiencia de la Prueba y el Modo en que se Presenta

Respecto a la evaluación de la prueba, la Regla 110 de Evidencia establece que el juzgador de los hechos tiene el deber de "evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados".[63] Asimismo, la aludida regla, establece que "[p]ara establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza".[64] Más bien, se requiere que la totalidad de la prueba haga más probable cierta conclusión.[65]

Cónsono con lo anterior, la evaluación de la prueba incluye la credibilidad y el valor probatorio que el juzgador le haya dado a la misma. En lo particular, "[l]a función del tribunal al analizar si la evidencia es susceptible de ser creída sólo requiere determinar si la evidencia puede ser creída por una persona razonable y de conciencia no prevenida, sin entrar a dirimir la credibilidad que amerita la prueba presentada".[66] Incluso, según la Regla 110 (d) de Evidencia, basta al juzgador de los hechos la credibilidad a un solo testigo presentado, por una parte, para dar por acontecido tal hecho.[67] Sobre este particular, nuestro Tribunal Supremo de Puerto Rico estableció que "[l]a tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz".[68] Por lo tanto, en este contexto, los jueces son quienes están en mejor posición de aquilatar la prueba testifical desfilada, ya que tienen la

---

[63] 32 LPRA Ap. VI, R. 110.
[64] *Íd.*
[65] *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 529 (2011).
[66] *Pueblo v. Colón, Castillo*, 140 DPR 564, 582 (1996).
[67] 32 LPRA Ap. VI, R.110.
[68] *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778-779 (2022), citando a *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

oportunidad de apreciar de cerca las alocuciones de los testigos, mientras observan sus gestos, contradicciones, dudas, manerismos y titubeos.[69] Como corolario de lo anterior, la Regla 607 (a) de Evidencia le concede al juez que preside el juicio amplia discreción sobre el modo en que se presenta la prueba e interroga a las personas testigos.[70] Ahora bien, este se deberá asegurar que:

> (1) La prueba se presente en la forma más efectiva posible para el esclarecimiento de la verdad, velando por la mayor rapidez de los procedimientos evitando dilaciones innecesarias.
>
> (2) Se proteja el derecho de las personas testigos contra preguntas impropias, humillantes o insultantes, o toda conducta ofensiva.
>
> (3) Se proteja también el derecho de éstas a que no se les detenga más tiempo del que exija el interés de la justicia y a que se les examine únicamente sobre materias pertinentes a la cuestión.[71]

Ahora bien, si una de las partes entiende que el juzgador de instancia erró al excluir cierta prueba, deberá hacer una oferta de prueba, indicando con claridad la evidencia excluida, la naturaleza propósito y pertinencia que ofrece, así como el fundamento específico para su admisibilidad.[72]

Si, aun así, el juzgador de instancia decide no admitir la prueba, y esta, en efecto, se excluyó de manera equivoca, se deberá llevar a cabo un análisis en cuanto a si la evidencia fue un factor decisivo en la sentencia emitida.[73] En otras palabras, que, si no se hubiera cometido el error, el resultado hubiera sido distinto.[74] De no ser así, se entenderá que es un error benigno, el cual no amerita que se revoque la determinación.[75]

---

[69] *Pueblo v. Toro Martínez*, 200 DPR 834, 857-858 (2018); *Pueblo v. García Colón I*, 182 DPR 129, 165 (2011).
[70] 32 LPRA Ap. VI, R. 607.
[71] *Íd.*
[72] Regla 104 de Evidencia, 32 LPRA Ap. VI, R. 104.
[73] *Izagas Santos v. Family Drug Center*, 182 DPR 463, 483-484 (2011).
[74] *Íd.*
[75] *Íd.*, a la pág. 104.

### E. El Debido Proceso de Ley

El debido proceso de ley es un derecho fundamental que encarna la esencia de nuestro sistema de justicia.[76] Este, se ha definido como "derecho de toda persona a tener un proceso justo y con todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo."[77] Tal garantía se encuentra consagrada en la Sección 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, la cual dispone que "[n]inguna persona será privada de su libertad o propiedad sin [el] debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes."[78]

Cabe resaltar que el debido proceso se manifiesta en dos (2) vertientes, una procesal y otra sustantiva.[79] Respecto a la dimensión procesal, el debido proceso de ley obliga al Estado a que, cuando se interfiera con los intereses de libertad o propiedad de una persona, se haga mediante un proceso justo y equitativo.[80] Quiérase decir que, cuando haya un planteamiento de violación a este derecho, primero se debe evaluar si existe un derecho propietario o libertario que merezca la correspondiente protección constitucional.[81]

Se ha establecido que las exigencias mínimas que se deben garantizar en un proceso judicial son: (1) una notificación adecuada del proceso; (2) un proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se fundamente en la evidencia presentada y admitida en el juicio.[82]

---

[76] *Vendrell López v. AEE*, 199 D.P.R. 352, 358 (2017).
[77] *Íd.*, pág. 359, citando a *Aut. Puertos v. HEO,* 186 DPR 417, 428 (2012).
[78] Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 301.
[79] *Hernández v. Secretario*, 164 DPR 390, 394 (2005).
[80] *Calderón Otero v. C.F.S.E.*, 181 DPR 386, 398 (2011).
[81] *Calderón Otero v. C.F.S.E.*, supra, a la pág. 397.
[82] *Hernández v. Secretario*, supra, a las págs. 395-396.

En lo pertinente al presente caso, precisa resaltar que, aunque en virtud del debido proceso de ley se debe garantizar el derecho a contrainterrogar, esto no implica que el ordenamiento jurídico no admita limitaciones a este derecho. Es por lo anterior que, las Reglas de Evidencia impone ciertas limitaciones al contrainterrogatorio. Entre ellas, que el contrainterrogatorio se circunscriba a la materia objeto de interrogatorio y a las cuestiones que afecten la credibilidad de los testigos.[83] No obstante, lo anterior, el tribunal puede a su discreción permitir que se hagan preguntas de otras materias como si fuera un interrogatorio directo.[84]

### III

En su único señalamiento de error, la parte apelante nos convida a que revoquemos la *Sentencia* apelada, mediante la cual se desestimó la demanda de autos. Nos plantea, en síntesis, que el foro *a quo* cometió un error manifiesto tras aplicar erróneamente el derecho, al concluir que la parte apelante incumplió con su obligación de ejercer su derecho de opción a compra dentro del término pactado y al no permitir a su representación legal contrainterrogar efectivamente al testigo de la parte apelada, a los fines de impugnación.

Según relatamos previamente, el caso de autos inició cuando la parte apelante presentó una demanda contra el Matrimonio Cruz-Pérez en la cual alegó que, entre las partes, se había otorgado un Contrato de Opción a Compraventa respecto a una propiedad ubicada en Aguadilla, y que, al momento en el cual se intentó ejercer la opción, el referido matrimonio impidió la transacción. Ello, aun cuando, según alegó, existieron contratos verbales entre las partes los cuales tuvieron el efecto de novar el contrato. Así, pues, la parte apelante peticionó al tribunal *a quo*, entre otras cosas, que se

---

[83] Regla 607 (b) (2) de Evidencia, 32 LPRA Ap. VI, R. 607.
[84] *Íd.*

ordenara el cumplimiento específico de lo pactado para que se elevara a escritura pública el negocio de compraventa sobre la propiedad en cuestión.

Luego de varias instancias procesales, las cuales incluyeron, pero no se limitaron, a la celebración del juicio en su fondo, en el cual se recibió tanto prueba testimonial como documental, el foro primario emitió la Sentencia que nos ocupa. En esta, desestimó la Demanda presentada por la parte apelante, concluyendo que nunca se configuró el incumplimiento de contrato alegado por la parte apelante, así como esta nunca ejerció su derecho a opción de compraventa.

En desacuerdo con el curso decisorio, la parte apelante acudió ante esta Curia. Según adelantamos, planteó que el tribunal cometió un error manifiesto puesto a que: (i) no se le permitió a su representación legal contrainterrogar efectivamente al testigo de la parte apelada, a los fines de impugnación, y (ii) al aplicar erróneamente el derecho y concluir que incumplió con ejercer su derecho de opción a compraventa.

De entrada, acentuamos que, conforme expusimos en nuestra exposición doctrinal previa, el ejercicio discrecional que efectúa el tribunal de instancia de apreciación de la prueba, así como de determinar hechos, está revestido de gran confiabilidad y merece deferencia por parte de este tribunal.[85] Esto, puesto a que es el foro primario el que tuvo la oportunidad de ver, escuchar y valorar los testigos, así como sus lenguajes no verbales.[86] Por tanto, no se debe sustituir el criterio del tribunal de instancia a menos que se demuestre que están presentes circunstancias extraordinarias, indicios de pasión, prejuicio, parcialidad o error manifiesto, o

---

[85] *Trinidad v. Chade*, supra, a la pág. 291.
[86] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219; *Meléndez Vega v. El Vocero de PR*, supra, a la pág. 142.

cuando un análisis integral de la prueba así lo justifique.[87] Respecto al error manifiesto, este se incurre por la primera instancia judicial cuando sus conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.[88] Tras evaluar minuciosamente los autos ante nuestra consideración, la transcripción de la prueba oral, el derecho aplicable a la controversia, así como las posiciones de las partes, juzgamos que el tribunal de instancia no incurrió en un error manifiesto, como tampoco está presente ninguna otra circunstancia extraordinaria que amerite que esta Curia intervenga con lo concluido por el referido foro. Nos explicamos.

La parte apelante alega que no se le permitió contrainterrogar al testigo de la parte apelante a los fines de impugnación. Es norma harta conocida que el debido proceso de ley es un derecho fundamental que encarna la esencia de nuestro sistema de justicia,[89] el cual se encuentra consagrado en la Sección 7 del Artículo II de nuestra Constitución.[90] En su vertiente procesal, se ha entendido que, entre las exigencias mínimas que se deben garantizar en un proceso judicial, está el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en contra.[91] Ahora bien, lo anterior no implica que, en ciertas instancias, el juzgador de instancia no pueda limitar este derecho. Entre las limitaciones que se han reconocido a través de nuestro derecho evidenciario se encuentra el que el contrainterrogatorio se limite a la materia del interrogatorio y a las cuestiones que afecten la credibilidad de los testigos.[92] Por otro lado, cabe destacar que la Regla 607 (a) de Evidencia le concede amplia discreción al juez que preside sobre el

---

[87] *Coop. Seguros Múltiples de P.R. v. Lugo*, supra, a la pág. 208; *Rivera Pérez v. Cruz Corchado*, supra, a la pág. 14; *Sierra v. Tribunal Superior*, supra, a la pág. 572.
[88] *Dávila Nieves v. Meléndez Marín,* supra*,* a la pág. 772.
[89] *Vendrell López v. AEE*, supra, a la pág. 358.
[90] Art. II, Sec. 7, Const. ELA, *supra.*
[91] *Hernández v. Secretario,* supra, a las págs. 395-396.
[92] Regla 607 (b) (2) de Evidencia, *supra.*

modo en que se presenta la prueba e interroga a las personas testigos. [93]

Surge de la transcripción de la prueba oral que el juzgador de instancia le permitió al representante legal de la parte apelante contrainterrogar ampliamente al testigo del Matrimonio Cruz-Pérez. Ahora bien, surge de la referida transcripción que el juzgador limitó en tres (3) ocasiones las preguntas efectuadas en el contrainterrogatorio. En las primeras dos (2) ocasiones, el juzgador de hechos intervino para ordenar al letrado a suscribirse a lo que fue materia del directo. La *primera* vez, el juzgador intervino luego de que se hicieran preguntas relacionadas a si el testigo hizo mención en su contestación a la demanda de si el terreno estaba segregado o no,[94] y la *segunda* vez, intervino cuando el letrado dirigió sus preguntas hacia unas alegadas negociaciones verbales. Ahí, el juzgador de instancia le explicó que lo que se discutió en el directo fue lo relativo al contrato escrito y no el verbal.[95] En la *tercera* ocasión, el juzgador de hechos dictaminó que no permitiría hacer preguntas sobre personas que no fueran parte del caso.[96] Ello, luego de que se objetara a una pregunta realizada al testigo por el representante legal de la parte apelante, respecto a si había ofrecido la propiedad a una persona que se encontraba presente en sala.[97]

Según explicamos en nuestra exposición doctrinal previa, si alguna de las partes entiende que el juzgador de instancia erró al excluir cierta prueba, esta debe hacer una oferta de prueba.[98] Pese a que en la *segunda* y *tercera* ocasión en la cual el juzgador limitó las preguntas del aludido letrado este hizo mención de que estaría haciendo una oferta de prueba, juzgamos que esta no fue realizada

---

[93] R. 607 (a) de Evidencia, *supra.*
[94] Transcripción de la prueba oral (TPO), a la pág. 152, líneas 7-10.
[95] *Íd.*, a las págs. 157-158.
[96] *Íd.*, a las pág. 177, líneas 9-13.
[97] *Íd.*, a las pág. 176, líneas 5-9.
[98] Regla 104 (b) de Evidencia, *supra.*

conforme al ordenamiento jurídico vigente. Cuando el juzgador de hechos intervino por *segunda* ocasión para indicarle al representante legal de la parte apelante que en el directo únicamente se hicieron preguntas respecto al contrato escrito, este último expresó: "yo tendría que solicitarle permiso al tribunal para hacer la pregunta y un ofrecimiento de prueba con la contestación para que se consigne en el récord. Porque yo puedo hacer un ofrecimiento [. . .]".[99] No obstante, lo anterior, luego manifestó: "yo me voy a sujetar al "ruling" del tribunal [. . .]".[100] Subsiguientemente, también indicó: "sometido [. . .]. Ya, ya hice mi objeción". [101] Posteriormente, en la *tercera* ocasión en la cual el tribunal limitó las preguntas del referido letrado, este declaró, sin más, que haría un ofrecimiento de prueba de que esa persona se encontraba en sala y que su representado lo señaló.[102]

Establecido lo anterior, puntualizamos que la Regla 104 (b) de Evidencia es clara en que, para que se configure la oferta de prueba, se debe establecer con claridad la evidencia excluida, la naturaleza, propósito y pertinencia que ofrece, así como el fundamento específico para su admisibilidad.[103] Somos de la opinión que nada de lo anterior se efectuó por el representante legal de la parte apelante en las dos (2) ocasiones en las cuales expresó que realizaría un ofrecimiento de prueba. Por otro lado, luego de evaluar detenidamente la transcripción de la prueba oral, entendemos que las limitaciones impuestas por el juzgador durante el contrainterrogatorio se encuentran dentro del marco de las facultades que le concede el ordenamiento jurídico al respecto.

Ahora, bien, en el caso de que entendiéramos de que, en efecto, fue un error del tribunal *a quo* limitar el contrainterrogatorio

---

[99] TPO, a la pág. pág. 159, líneas 8-11.
[100] *Íd.,* pág. 162, líneas 10-11.
[101] *Íd.,* pág. 163, líneas 10-11.
[102] *Íd.,* pág. 177, líneas 14-15.
[103] Regla 104 (b) de Evidencia, *supra.*

realizado al testigo de la parte apelada, esto no implica automáticamente que se debe revocar la determinación del referido foro. Primero, se deberá hacer un análisis de si lo excluido fue determinante en la sentencia emitida.[104] Colegimos que en el caso de marras no fue determinante.

Conviene mencionar que las partes del título acordaron estipular el Contrato de Opción a Compraventa, el cual fue marcado como Exhibit I. Del referido contrato surge que las partes acordaron un término de dos (2) años para que la parte compradora ejerciera su derecho a compraventa, el cual podría ser prorrogado por un término adicional.[105] Además, para ejercer el referido derecho la parte apelante debía realizar al Banco un pago final de veinticinco mil dólares ($25,000) y refinanciar la propiedad a su nombre en un término no mayor de sesenta (60) días de finalizados los referidos dos (2) años.[106] De los autos ante nuestra consideración, ni de la transcripción de la prueba surge evidencia de que la parte apelante haya cumplido con los requerimientos para ejercer su derecho de opción a compraventa. Únicamente se desprende que por veinticuatro (24) meses se hizo responsable de la hipoteca de la propiedad en cuestión. Conforme expusimos anteriormente, cuando entre las partes existe un contrato de opción a compraventa es indispensable que el optante notifique al optatario su voluntad de perfeccionar el contrato aceptado, ya que, si deja transcurrir el plazo concedido sin hacer ninguna manifestación y cumplir con las exigencias para optar, el derecho de opción quedará extinguido.[107] Lo anterior, fue precisamente lo que ocurrió en este caso.

Por otro lado, es necesario puntualizar que la cláusula catorce (14) del Contrato de Opción a Compraventa estipulado es claro en

---

[104] *Izagas Santos v. Family Drug Center*, supra, a las págs. 483-484.
[105] SUMAC TPI, Entrada Núm. 109, Anejo 1.
[106] *Íd.*
[107] *S.L.G. Irizarry v. S.L.G. García*, supra, a la pág. 722.

que "ninguna representación, promesa, acuerdo verbal o de otra índole por parte de la vendedora o compradora que no esté incluida [en el contrato] tendrá fuerza o efecto alguno".[108] Sabido es que cuando los términos de un contrato, sus condiciones y exclusiones, son claros y específicos, no dando margen a ambigüedades u otras interpretaciones, así deben aplicarse.[109] En vista, de que no hay prueba ninguna en este caso de que hubo vicios o mala fe en la inclusión de dicha cláusula en el contrato, somos de la opinión de que se debe ser fiel a la misma. De manera que, no es posible dar cabida a los planteamientos de la parte apelante en su recurso, así como en su alegato suplementario, de que existieron negociaciones verbales que tuvieron el efecto de novar el contrato. Ello, puesto a que las negociaciones verbales, si las hubo, en virtud de la referida cláusula, no tuvieron efecto alguno respecto al Contrato de Opción a Compraventa.

Por todo lo antes expuesto, no es posible que podamos concluir que el foro primario aplicó erróneamente el derecho y concluyó de manera equivocada que la parte apelante incumplió con ejercer su derecho de opción a compraventa. Siendo así, colegimos que el error esgrimido por la parte apelante *no se cometió*. En consecuencia, nos es forzoso confirmar el dictamen apelado.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[108] SUMAC TPI, Entrada Núm. 109, Anejo 1.
[109] *Rivera Rodríguez v. Rivera Reyes*, supra, a la pág. 212; *Unysis v. Ramallo Brothers*, supra, a la pág. 852.