ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO  Peticionario  v.  MUNICIPIO AUTÓNOMO MAYAGÜEZ Y OTROS  Recurridos | KLCE202401018 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez  Caso Núm.: ISCI200801015 (307)  Sobre: Cobro de dinero |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Sánchez Báez.[1]

Sánchez Báez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 17 de febrero de 2026.

Compareció la Autoridad de Acueductos y Alcantarillado de Puerto Rico (en adelante, "AAA" o "peticionario") mediante el recurso de *Certiorari* de epígrafe. Nos solicita la revisión de la *Resolución y orden* emitida el 12 de marzo de 2024 y notificada el 18 de marzo de 2024 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (en adelante, "foro de instancia"). En el aludido dictamen, el foro de instancia denegó la reapertura del caso de epígrafe, debido a que existían partes indispensables bajo la jurisdicción de la Corte Federal bajo el Título III de PROMESA.

Por los fundamentos que expondremos a continuación, se **expide** el auto de *Certiorari* y se **revoca** el dictamen recurrido.

-I-

El 20 de junio de 2008, la AAA presentó una *Demanda* sobre cobro de dinero contra el Municipio Autónomo de Mayagüez (en

---

[1] Mediante la Orden Administrativa OATA-2025-002 emitida el 9 de enero de 2025 se designó al Juez Isaías Sánchez Báez en sustitución de la Jueza Eileen J. Barresi Ramos.

adelante, "Municipio de Mayagüez").[2] En esencia, alegó que el Municipio de Mayagüez ha incumplido con su obligación de pagar por los servicios de agua y alcantarillado que se le ofrecen al edificio de Centro Médico de Mayagüez (en adelante, Centro Médico"). A la fecha de la Demanda, la AAA alegó que ha ofrecido sus servicios ininterrumpidamente por décadas a Centro Médico y su cuenta adeuda una cantidad acumulada de $5,536,459.09. Además, sostuvo que realizó múltiples gestiones de cobro, pero que estás resultaron infructuosas.

Por su parte, el Municipio de Mayagüez presentó su *Contestación a Demanda* en la cual adujo que el edificio de Centro Médico ha estado ocupado por los inquilinos siguientes: (i) Advanced Cardiology, Inc., (i) Administración de Servicios de Salud Mental y contra la Adicción (en adelante, "ASSMCA") adscrita al Departamento de Salud y (iii) Administración Rehabilitación Vocacional del Departamento del Trabajo y Recursos Humanos (en adelante, "DTRH").[3] Por lo cual, arguyó que las mencionadas entidades adeudan la cantidad reclamada en proporción a su ocupación en el edificio de Centro Médico. Por consiguiente, presentó una *Demanda contra tercero* contra estas agencias.[4]

Luego de varios trámites procesales y en cumplimiento de la *Sentencia* del Tribunal de Apelaciones[5], la AAA instó su *Segunda Demanda Enmendada.*[6] En esta, acumuló como demandados al Departamento de Salud, ASSMCA y el DTRH. Además, alegó que, aunque el Municipio de Mayagüez tiene relaciones contractuales con las entidades codemandadas que ocupan el edificio de Centro Médico, continúa siendo el único dueño y abonado registrado en la cuenta de servicios de agua y alcantarillado. Esto es, argumentó que

---

[2] Apéndice del recurso, anejo 3, págs. 8-16.
[3] *Id.,* anejo 4, págs. 17-21.
[4] *Id.*, anejo 5, págs. 22-25.
[5] Véase, KLCE201201356 CONS CON. KLCE201201380.
[6] *Id.,* anejo 13, págs. 58-64.

las entidades codemandadas se obligaron al pago de servicio de agua y alcantarillado con el Municipio de Mayagüez, más no así con la AAA. Por lo cual, sostuvo que el Municipio de Mayagüez es el deudor principal y solidario para con la AAA.

Posteriormente, el foro de instancia emitió el 1 de diciembre de 2014, notificada el 3 de diciembre de 2014, una *Resolución* mediante la cual concluyó que, aunque el Municipio de Mayagüez no es el responsable de pagar la totalidad de la deuda acumulada con la AAA, es el responsable del contador principal que registra el servicio de agua y alcantarillado del edificio de Centro Médico.[7]

Asimismo, el foro de instancia reiteró mediante la *Resolución* del 22 de junio de 2016 que el Municipio de Mayagüez se obligó contractualmente a pagar las utilidades del edificio de Centro Médico.[8] En particular, explicó como sigue:

> Al suscribir la Escritura Número 2 sobre compraventa del inmueble que alberga el Centro Médico, el Municipio se comprometió voluntariamente, y sin excepción alguna, al pago de todas las utilidades. Dicho pago incluye el pago por los servicios de agua y alcantarillado que recibe el inmueble, y que se registran a través del contador principal ("master"). Como resultado de ello, el Municipio viene obligado a cumplir con tal obligación contractual; y a cumplir con el reglamento 6685 Sobre los Servicios de Agua de la AAA. En lo pertinente, el Artículo 6.07 del Reglamento 6685 de la AAA dispone:
>
>> "Todo usuario abonado será responsable del pago por todos los servicios prestados bajo su nombre. Dicha responsabilidad continuará vigente aún cuando el abonado haya dejado de utilizar los servicios y los mismo continúen siendo utilizados por otras personas, con o sin su consentimiento. Dicha responsabilidad cesará únicamente cuando el abonado haya solicitado debidamente el cese de los servicios".
>
> El Municipio no puede eludir su obligación por el pago de los servicios de agua y alcantarillado sanitario que recibe el Centro Médico de Mayagüez, y que se registran a través del contador principal ("master"), reclamando que dicho pago le corresponde a terceros. Máxime, cuando el propio Municipio certificó que nunca ha solicitado el cese de los servicios que recibe bajo su nombre, según lo requiere el Artículo 6.07 del Reglamento 6685 de la AAA.[9]

---

[7] *Id.,* anejo 19, págs. 93-99.
[8] *Id.,* anejo 20, págs. 100-113.
[9] *Id.,* pág. 111.

Tras decretar la paralización automática de la reclamación conforme a PROMESA solo en cuanto al Gobierno de Puerto Rico, el 4 de noviembre de 2019, el foro de instancia mediante *Sentencia* paralizó la totalidad del pleito de epígrafe —incluyendo, a su vez, a las agencias gubernamentales codemandadas— y dispuso lo siguiente:

> [...] en consideración al estado de la solicitud de quiebra presentada por la Junta de Control Fiscal, en representación del Estado Libre Asociado de Puerto Rico, bajo el Título III de la Ley PROMESA, se decreta el Archivo Administrativo para fines estadísticos, sin perjuicio. Véase, 11 USC §§ 362(a), 922(a); 48 USC § 2161(a).
>
> Expresamente reservamos jurisdicción para decretar la reapertura del presente caso, a solicitud de parte interesada, en caso de que dicha orden de paralización sea dejaba sin efecto, en cualquier momento con posterioridad a la fecha de la presente Sentencia y la parte interesada acuda ante este Foro a solicitar la continuación de los procedimientos.[10]

Ulteriormente, el 21 de noviembre de 2023, la AAA instó una *Moción para reapertura del caso y para señalamiento de vista sobre estado de los procedimientos*.[11] Alegó que no existe razón en derecho para que el caso de epígrafe continue paralizado en cuanto al Municipio de Mayagüez, ya que la Corte Federal confirmó el Plan de Ajuste sometido por la Junta de Control Fiscal. Sostuvo que, tanto la Orden de Confirmación como el referido plan, proveen de manera expresa la conclusión de la orden de paralización a la fecha de efectividad, el 15 de marzo de 2022. Por lo cual, solicitó que se decretara la apertura del caso con respecto al Municipio de Mayagüez.

El 28 de noviembre de 2023, el Municipio de Mayagüez presentó su *Oposición a "Moción para reapertura del caso y para señalamiento de vista sobre estado de los procedimientos"*. En síntesis, alegó que la Orden de Confirmación extendió la protección de paralización más allá de la fecha de efectividad del Plan de Ajuste

---

[10] *Id.,* anejo 21, pág. 115.
[11] *Id.,* anejo 22, págs. 117-155.

mediante un *injunction* permanente. Es decir, sostiene que el caso continúa paralizado. Por lo cual, adujo que no es posible emitir un dictamen completo sin la presencia del Gobierno de Puerto Rico y sus agencias, ya que el foro de instancia dictaminó previamente que son los responsables frente a la AAA por el consumo de agua y servicio alcantarillado.

Así las cosas, el foro de instancia emitió el 12 de marzo de 2024, notificada el 18 de marzo de 2024, una *Resolución y orden* mediante la cual dispuso como sigue:

> Siendo el Departamento de Salud, ASSMCA y el Departamento de Trabajo, agencias del Estado Libre Asociado de Puerto Rico bajo la jurisdicción de la Corte Federal bajo el Titulo III de PROMESA y partes indispensables para la solución de pleito ante nuestra consideración; se declara No Ha Lugar a la reapertura del caso en estos momentos.[12]

En desacuerdo, la AAA instó una *Moción de reconsideración y/o para determinaciones y conclusiones adicionales*.[13] Argumentó que el foro de instancia erró al considerar que las agencias del gobierno central son partes indispensables, toda vez que no indicó en su dictamen qué interés o derecho tienen estas que podrían verse afectados por la reapertura del caso de epígrafe. En la alternativa, solicitó que el foro de instancia emitiera determinaciones adicionales a los efectos de identificar qué interés o derechos tienen que proteger las mencionadas agencias.

En contraposición, el Municipio de Mayagüez presentó su *Oposición a "Moción de reconsideración y/o para determinaciones y conclusiones adicionales"*.[14] En esencia, adujo que el tracto procesal del caso de epígrafe demuestra que el foro de instancia determinó que las referidas agencias del gobierno central son responsables ante la AAA por su consumo de agua y servicio de alcantarillado.

---

[12] *Id.,* anejo 1, pág. 3.
[13] *Id.,* anejo 25, págs. 180-184.
[14] *Id.,* anejo 26, págs. 185-188.

A esos efectos, el foro de instancia emitió el 6 de agosto de 2024, notificada el 20 de agosto de 2024, una *Resolución y orden* en la que denegó la reconsideración solicitada por AAA.[15]

Inconforme, la AAA acudió ante nos mediante el recurso de epígrafe y señaló la comisión de los errores siguientes:

> PRIMER ERROR. Erró el Tribunal de Primera Instancia al determinar que las agencias del gobierno central son partes indispensables en el pleito y ello denegar la reapertura del caso con respecto al Municipio de Mayagüez.
>
> SEGUNDO ERROR. El Tribunal de Primera Instancia abusó de su discreción al negarse a conceder la reapertura del caso con respecto al Municipio de Mayagüez "en estos momentos" cuando en contra de las agencias del gobierno central nunca se podrá reabrir el caso dado que recibieron la exoneración de las deudas conforme al Título III de PROMESA.

Por su parte, el Gobierno de Puerto Rico —de forma especial y sin someterse a nuestra jurisdicción— presentó su alegato en oposición al recurso de epígrafe, el cual fue adoptado por referencia por el Municipio de Mayagüez. En consecuencia, la AAA instó un alegato suplementario y, asimismo, el Municipio de Mayagüez presentó su alegato en réplica.

Así pues, perfeccionado el recurso, procedemos a exponer la normativa jurídica aplicable a las controversias ante nuestra consideración.

## -II-

### A. Parte indispensable y la responsabilidad solidaria

La Regla 16 de Procedimiento Civil, 32 LPRA Ap. V, R. 16, regula lo concerniente a la acumulación de partes. En particular, establece que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". 32 LPRA Ap. V, R. 16.1. Este precepto, en nuestra jurisdicción, es conocido como parte indispensable. *DACO v. LUMA y otros,* 2025 TSPR 126, pág. 29, 217 DPR ___ (2025).

---

[15] *Id.*, anejo 2, págs. 4-7.

Además, la Regla 16.1 de Procedimiento de Civil, *supra,* encarna dos principios constitucionales, a saber: (i) la prohibición de que una persona sea privada de su libertad o propiedad sin un debido proceso de ley y (ii) la necesidad de que el dictamen judicial incluya a todas las partes con interés para que sea uno completo. *DACO v. LUMA y otros,* supra. En relación con el interés común de las partes que requiere la precitada regla, nuestra Alta Curia ha expresado que "el mismo debe ser uno real e inmediato, y que no basta con que sea un interés especulativo ni futuro". *Id.* De manera que una parte indispensable es "aquella de la cual no se puede prescindir y cuyo interés en la cuestión es de tal magnitud [...] que no puede dictarse un decreto final entre las otras partes sin lesionar ni afectar radicalmente sus derechos". *Inmob. Baleares et al. v. Benabe et al.,* 214 DPR 1109, 1120 (2024).

Por ello, la defensa de falta de parte indispensable es irrenunciable y puede presentarse en cualquier momento del pleito e incluso los tribunales pueden levantarla *motu proprio. DACO v. LUMA y otros,* supra, pág. 30; *Inmob. Baleares et al. v. Benabe et al.,* supra, pág. 1121. Considerando lo anterior, el Tribunal Supremo nos ha requerido que —al momento de interpretar la Regla 16.1 de Procedimiento Civil, *supra*— "evaluemos juiciosamente, con un enfoque pragmático, las particularidades de cada caso, y los derechos de las partes que no están presentes en el pleito, pero cuyos derechos podrían verse afectados". *DACO v. LUMA y otros,* supra.

A su vez, en nuestro ordenamiento se ha reiterado que una sentencia dictada sin incluir a una parte indispensable es nula, toda vez que priva al tribunal de jurisdicción sobre la persona que se pretende imponer el dictamen. *DACO v. LUMA y otros,* supra; *Inmob. Baleares et al. v. Benabe et al.,* supra.

Ahora bien, en el contexto de la responsabilidad solidaria, se ha establecido que un deudor solidario no es parte indispensable. J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Publicaciones JTS, 2011, Tomo II, pág. 695. Como se sabe, "[e]l acreedor puede dirigirse contra cualquiera de los deudores solidarios o contra todos ellos simultáneamente". Artículo 1097 del derogado Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3108.[16] Además, nuestro ordenamiento reconoce que "[e]l pago hecho por uno de los deudores solidarios extingue la obligación" y este "sólo puede reclamar de sus codeudores la parte que a cada uno corresponda". Artículo 1098 del derogado Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3109. En otras palabras, cada deudor solidario responde por la obligación total frente al acreedor, pero su responsabilidad es autónoma respecto a los demás codeudores solidarios. Por tanto, aquel deudor solidario que pague en exceso a lo que le corresponde —a base de su relación interna— tiene derecho a ejercitar una acción de nivelación contra los demás codeudores solidarios. *Maldonado Rivera v. Suárez y otros*, 195 DPR 182, 204 (2016). Es decir, tiene derecho a reclamar la cuantía satisfecha en exceso de su responsabilidad.

Incluso, en el contexto de un procedimiento de quiebra, nuestra Alta Curia ha reconocido "que la insolvencia de uno de los deudores solidarios no afecta la acreencia del [acreedor], pudiendo éste dirigirse contra los demás codeudores, quienes responderán por el restante de la parte adeudada por el insolvente. Éstos, en su relación interna, serán responsables de dicha parte a prorrata de sus deudas." *Blás v. Hospital Guadalupe*, 167 DPR 439, 457-458

---

[16] A pesar de que, el 28 de noviembre de 2020, entró en vigor el nuevo Código Civil de Puerto Rico de 2020, los hechos del caso de epígrafe se desarrollaron previo a la fecha de vigencia del citado estatuto. Por lo cual, evaluaremos las controversias de acuerdo con el derecho establecido en el derogado Código Civil de 1930 conforme dispone el Artículo 1808 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 11713.

(2006). A similar conclusión han llegado otros tribunales al enfrentarse al asunto de si un deudor solidario es una parte indispensable. Véase, *Temple v. Synthes Corp.,* 498 US 5, 7 (1990). Además, nuestro propio Código Civil dispone que "[l]a falta de cumplimiento de la obligación por insolvencia del deudor solidario será suplida por sus codeudores a prorrata de la deuda de cada uno". Artículo 1098 del derogado Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3109.

## B. PROMESA

El Congreso de los Estados Unidos aprobó la ley federal titulada *Puerto Rico Oversight, Management, Economic Stability Act* (en adelante, "PROMESA" por sus siglas en inglés) con el fin de atender la crisis económica de Puerto Rico. 48 USCA sec. 2101 *et seq.* En particular, el Título III de PROMESA dispone el procedimiento para que el Gobierno de Puerto Rico para presentar una petición de quiebra. 48 USCA sec. 2161. Por lo cual, incorporó disposiciones del Código de Quiebras Federal. 48 USCA sec. 2161(a). En las pertinentes al caso de epígrafe, incorporó las secciones relacionadas a la paralización automática de los pleitos contra el deudor (conocido como *automatic stay*) y las de descargue de las obligaciones del deudor (conocido como *discharge*). 11 USCA secs. 362, 922 y 524 (a). Con relación a estas figuras jurídicas, el Juez Asociado Martínez Torres en su voto particular de conformidad en *Vera González v. ELA*, 199 DPR 995, 999 (2018) (Resolución) planteó lo siguiente:

> [...] la paralización y el descargue de las obligaciones del deudor son dos cosas distintas. La paralización ocurre automáticamente cuando se presenta la petición de quiebra contra cualquier reclamación monetaria que exista contra el deudor. En cambio, el descargue de una obligación del deudor es el fin último del proceso de quiebras y ocurre al final de este.

Por un lado, la paralización automática "constituye una de las protecciones básicas que, de ordinario, ofrece el procedimiento de

quiebras al deudor, pues tiene como propósito protegerlo de reclamaciones de los acreedores, a la vez que protege a estos últimos de las reclamaciones de otros acreedores". *Depto. de Hacienda v. COTIARI*, 203 DPR 1049, 1055 (2020). Es decir, es la protección del deudor sobre las reclamaciones incoadas —o que pudieron incoarse— en su contra antes de presentarse la petición de quiebra. *Requena Mercado et als. v. Policía de PR*, 205 DPR 285, 291 (2020). Además, esta protección es automática, no requiere notificación forma y es efectiva desde que se presenta la petición de quiebra hasta que se dicta sentencia final. *Peerles Oil v. Hnos. Torres Pérez*, 186 DPR 239, 255 (2012). Ello, fue reiterado en el propio texto de PROMESA de la siguiente manera: "[t]he commencement of a case under this subchapter constitutes an order for relief". 48 USCA sec. 2164(C); además, véase voto particular de conformidad emitido por el Juez Asociado Martínez Torres en *Vera González v. ELA*, supra, pág. 998 (Resolución).

En cambio, el descargue de las obligaciones del deudor consiste en anular o liberar al deudor de todas sus deudas previas a la petición de quiebra. 11 USCA sec. 524. Asimismo, el descargue opera como un *injunction* permanente que prohíbe al acreedor el cobro de las deudas condonadas al deudor. *Id.* Dicho esto, conforme al Código de Quiebra Federal, el descargue tiene el efecto de limitar la responsabilidad del deudor —quien presentó la petición de quiebra— sobre determinada deuda y no afecta de ninguna manera la responsabilidad de otra entidad. Véase, 11 USCA sec. 524(e); 4 *Collier on Bankruptcy* sec. 524.05, pag. 524-58 ("[…] it has been repeatedly held that the discharge has no effect on the liability of a nondebtor codebtor or guarantor of the discharged debt.") Esto es, las deudas que fueron descargas en el proceso de quiebra no son eliminadas, sino que éstas subsisten frente a deudores solidarios. A tono con ello, nuestro Tribunal Supremo reconoció lo siguiente:

> La responsabilidad de una persona que es codeudor, fiador o en alguna forma garantizador de un quebrado no se altera por la adjudicación en quiebra de éste. El propósito de la sección citada es proteger el ejercicio de cualquier acción que tenga el acreedor contra cualquier otra persona que se hubiere obligado conjuntamente con el deudor quebrado. En otras palabras, la iniciación del procedimiento de quiebra es una defensa personal que puede levantarse por el deudor peticionario únicamente, pero que no beneficia a los codeudores. A los fines de poder reclamar contra el codeudor solidario o fiador, es inmaterial que el acreedor pruebe su reclamación contra el deudor principal dentro del procedimiento de quiebra. Es más, puede probar su reclamación, recibir la parte proporcional que se adjudique a los acreedores, y dirigir entonces su acción por el balance contra el codeudor. Desde 1917 resolvimos en *Santiago v. Ares*, 25 DPR 481, que la reclamación que un acreedor haya podido hacer ante la Corte de Distrito de Estados Unidos para Puerto Rico en un procedimiento de quiebra contra la deuda principal no le impide ejercitar la acción de cobro contra el fiador solidario, incumbiendo a éste en su caso probar la extinción total o parcial de la deuda.

*Cámara Insular Etc. v. Anadón*, 83 DPR 374, 380-381 (1961) (citas omitidas).

Lo anterior fue reiterado por nuestra Alta Curia en *Peerles Oil v. Hnos. Torres Pérez*, supra, págs. 259-261, al resolver como sigue:

> [...] la responsabilidad de un garantizador no se altera por la presentación de una petición de quiebra hecha por el deudor principal. Por consiguiente, cuando en un pleito hay varios codeudores, garantizadores o fiadores, estos no se pueden amparar en la quiebra de uno de los deudores para alegar también la paralización del proceso en su contra.
>
> .     .     .     .     .     .     .     .
>
> Resolver lo contrario implicaría sostener que la presentación de una petición de quiebras tiene el efecto de desgarrar la solidaridad pactada.

Ahora bien, el 3 de mayo de 2017, el Gobierno de Puerto Rico presentó una petición de quiebra al amparo del Título III de PROMESA. *Depto. de Hacienda v. COTIARI*, supra. De manera que entró en vigor la paralización automática de los pleitos que involucraban reclamaciones monetarias presentadas o que se pudieran presentar en contra el Gobierno de Puerto Rico. *Id.*

Posteriormente, el 18 de marzo de 2022, el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico emitió una Orden de Confirmación mediante el cual confirmó el *Modified Eighth Amended Title II Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, conocido como el Plan de Ajuste de la Deuda. *In re Fin. Oversight & Mgmt.*, No. 17 BK 3283-LTS, Doc.

19813,https://promesa.prd.uscourts.gov/sites/default/files/1981 3-main.pdf. Por virtud de la referida orden, el Plan de Ajuste de la Deuda entró en vigor desde el 15 de marzo de 2022. *Id.* En el inciso 59 de la Orden de Confirmación, se estableció un *injunction* permanente que reemplazó la paralización automática, ya que tuvo el efecto de paralizar las reclamaciones pasadas, presentes y futuras contra el Gobierno de Puerto Rico. En particular, dispone como sigue:

> 59. Injunction on Claims. Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability discharged pursuant to the Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property. Notwithstanding the foregoing, without prejudice to the exculpation rights set forth in section 92.7 of the Plan and decretal paragraph 61 hereof, nothing contained in the Plan or this Confirmation Order is intended, nor shall it be construed, to be a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors.

*Id.,* págs. 63-64.

Asimismo, la Sección 92.2 del Plan de Ajuste de la Deuda incluyó el mecanismo de descarga y relevo de reclamaciones y

causas de acciones contra el Gobierno de Puerto Rico de la manera siguiente:

92.2 Discharge and Release of Claims and Causes of Action:

a) Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in Section 92.7 hereof, nothing contained in the Plan or the Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors. Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407 [...]

(b) Except as expressly provided in the Plan or the Confirmation Order, all Entities shall be precluded from asserting any and all Claims against the Debtors and Reorganized Debtors, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets and property, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtors and the Reorganized Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtors or Reorganized Debtors and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the Effective Date, and in consideration for the value provided under the Plan, each holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtors and Reorganized Debtors, and their respective Assets and property and all such Claims.

*In re Fin. Oversight & Mgmt.*, No. 17 BK 3283-LTS, Doc. 19813-1, Exhibit A-Plan,https://promesa.prd.uscourts.gov/sites/default/files/19813-1.pdf.

Además, el referido Plan de Ajuste de la Deuda define y reconoce que los "deudores" son "[c]ollectively, the Commmonwealth, ERS [Employees Retirement System] and PBA [Puerto Rico Public Building Authority]". *Id.,* pág. 25, Art. I, Sec. 1.192.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

De entrada, procedemos atender el primer señalamiento de error. El peticionario alega que el foro de instancia erró al determinar que las agencias del Gobierno de Puerto Rico son parte indispensables en el pleito. Tiene razón, veamos.

Conforme explicamos en el acápite II de esta *Sentencia,* una parte indispensable es aquella cuya ausencia impide la adjudicación del pleito, ya que sus derechos se lesionan al conservar un interés real e inmediato sobre la controversia en cuestión. Véase, 32 LPRA Ap. V, R. 16; *DACO v. LUMA y otros*, supra. Tanto así que nuestro ordenamiento a sostenido que una sentencia con falta de parte indispensables es nula. *Id.* Sin embargo, en el ámbito de la responsabilidad solidaria, los deudores solidarios no son partes indispensables en un pleito, ya que el acreedor tiene el derecho a elegir el reclamo de la deuda a uno o a todos los codeudores solidarios. Véase, J. Cueva Segarra, *supra*; 31 LPRA secs. 3108-3109; *Maldonado Rivera v. Suárez y otros*, supra. Ello, por supuesto, sin perjuicio de que en la relación interna entre los codeudores proceda el derecho de nivelación. *Id.*

En el caso ante nuestra consideración consiste en una demanda sobre cobro de dinero instada por la AAA contra el

Municipio de Mayagüez, quien posteriormente acumuló al Departamento de Salud, ASSMCA y el DTRH como deudores solidarios. Véase, apéndice del recurso, anejo 13, págs. 58-64. Más aun, consta en el expediente que el foro primario reconoció —mediante la *Resolución* del 3 de diciembre de 2014 y, luego, en la *Resolución* del 22 de junio de 2016— la relación solidaria entre el Municipio de Mayagüez y las referidas entidades gubernamentales. Véase, apéndice del recurso, anejos 19 y 20, págs. 93-99 y 100-113. En particular resolvió que, si bien el Municipio de Mayagüez no es el único responsable de pagar la totalidad de la deuda acumulada por los servicios de agua y alcantarillado —ya que las mencionadas agencias gubernamentales ocupaban espacios en el edificio de Centro Médico— éste se obligó contractualmente con la AAA a pagar por tales servicios y es el único usuario registrado ante la AAA. *Id.*

Nótese que, aquí la ley del caso es que el Municipio de Mayagüez y las agencias gubernamentales concernientes son deudores solidarios. No obstante, ello no significa que sean partes indispensables sin cuya presencia no pueda otorgarse en remedio. Véase, J. Cueva Segarra, *supra*; *Temple v. Synthes Corp.*, supra.

Así pues, la AAA como acreedor tiene derecho a reclamar el pago de la deuda: (i) solo al Municipio de Mayagüez, (ii) a cualquiera de las agencias gubernamentales o (iii) a todos en conjunto. Independientemente contra cuál deudor solidario se dirija la acción de cobro, la AAA no perjudica el derecho de nivelación de aquel deudor que pague en exceso a lo que le corresponde. Por lo tanto, la ausencia de cualquiera de los deudores solidarios en este caso no lesiona ni afecta sus derechos, toda vez que estos en su relación interna pueden reclamar la cuantía satisfecha en exceso a su responsabilidad. Por ende, determinamos que las agencias gubernamentales no son parte indispensable en este caso.

En consecuencia, concluimos que el foro de instancia erró al determinar que las agencias gubernamentales son partes indispensables en la presente reclamación. Así, colegimos que se cometió el primer error señalado.

Por otro lado, a continuación, atenderemos el segundo señalamiento de error. El peticionario plantea que el foro de instancia erró al denegar la reapertura del caso respecto al Municipio de Mayagüez tras la conclusión expresa de la paralización automática en la petición de quiebra ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico. Le asiste la razón, veamos.

Según explicamos anteriormente, la AAA instó una acción de cobro contra los deudores solidarios siguientes: (1) Municipio de Mayagüez, (2) Departamento de Salud, (3) ASSMCA y (4) el DTRH. La AAA reclamaba una deuda acumulada por los servicios de agua y alcantarillado del edificio de Centro Médico. Por un lado, el Municipio de Mayagüez era el único usuario registrado en la AAA y, de otro lado, las mencionadas agencias gubernamentales ocupaban el edificio de Centro Médico. Sin embargo, en el transcurso de los procedimientos, el Gobierno de Puerto Rico presentó una petición de quiebra al amparo del Título III de PROMESA. Consecuentemente, el foro de Instancia paralizó la totalidad del caso de epígrafe en conformidad con la legislación federal, ya que involucraba una reclamación monetaria contra el Gobierno de Puerto Rico.

Luego, a través de una Orden de Confirmación, el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico confirmó el Plan de Ajuste de la Deuda presentado por el Gobierno de Puerto Rico como deudor en el caso ante su consideración. Ciertamente, el inciso 59 de la referida Orden de Confirmación estableció un *injunction* permanente que paraliza aquellas reclamaciones pasadas, presentes y futuras del deudor que

peticionó la quiebra. Asimismo, la Sección 92.2 del mencionado Plan de Ajuste de la Deuda descargó y reveló las reclamaciones y causas de acción contra el deudor sometido a la quiebra. No obstante, nótese que, el propio Plan de Ajuste de la Deuda reconoce que el "deudor" sometido a la quiebra es el conjunto del "Commonwealth, ERS y PBA". Esto es, el deudor de la petición de quiebra está constituido por el Gobierno de Puerto Rico, el Sistema de Retiro de Empleados y la Autoridad de Edificios Públicos.

Nótese, pues, que el Municipio de Mayagüez no está considerado como un deudor en la aludida petición de quiebra. A pesar de ello, el foro de instancia determinó que no procedía la reapertura del caso de epígrafe, en la medida que el Departamento de Salud, ASSMCA y el DTRH eran agencias del Gobierno de Puerto Rico sometidos a la jurisdicción del Tribunal Federal de los Estados Unidos para el Distrito de Puerto Rico y fungían como partes indispensables.

Sobre este particular, ya concluimos que las mencionadas entidades gubernamentales no figuran partes indispensables en la controversia ante nuestra consideración, debido a la responsabilidad solidaria que les concierne a los deudores. Ahora bien, nos corresponde analizar si el descargue efectuado a favor de un deudor solidario es aplicable a otros deudores solidarios que no fueron peticionarios de la quiebra. Contestamos en la afirmativa.

Nuestro Tribunal Supremo ya ha tenido oportunidad de examinar y expresarse sobre esta controversia en el pasado. Al respecto, ha sostenido que las deudas que le fueron descargadas a un deudor solidario en un procedimiento de quiebra, no son eliminadas respecto a los demás deudores solidarios no sometidos a la quiebra, sino que subsisten frente a estos últimos. Véase, *Peerles Oil v. Hnos. Torres Pérez*, supra*; Blás v. Hospital Guadalupe*, supra; *Cámara Insular Etc. v. Anadón*, supra. Ello, precisamente por la

condición de solidaridad entre los deudores, un acreedor tiene la facultad de elegir reclamar el cumplimiento de la obligación respecto a un solo codeudor o a todos los codeudores solidarios sin perjudicar el derecho de nivelación que proceda entre ellos en su relación interna. Además, nos parece pertinente señalar que los Artículos 1097 y 1098 del derogado Código Civil —así como sus disposiciones equivalentes en el nuevo Código Civil— contemplan este escenario y solución. 31 LPRA secs. 3108-3109; a su vez, véase Artículos 1102 y 1103 del nuevo Código Civil de Puerto Rico de 2020, 31 LPRA secs. 9061-9062.

En el caso de epígrafe, la AAA tiene la facultad de elegir reclamar la deuda contra el Municipio de Mayagüez solamente y este último —por su cualidad de deudor solidario— vendría obligado a responder por el total de la deuda. Sin embargo, el Municipio de Mayagüez tendría derecho a ejercitar una acción de nivelación contra las agencias gubernamentales en su relación interna que en su día proceda, entendiéndose ello limitado, naturalmente, por las protecciones que el derecho federal de quiebra y, en este caso PROMESA, les ofrecen a los deudores cobijados.

Por lo tanto, colegimos que el mero hecho de que un deudor solidario sea insolvente y se haya beneficiado del descargue de las deudas debido a un procedimiento de quiebra, no afecta la acreencia a la que tiene derecho un acreedor contra el resto de los codeudores solidarios. Por lo cual, reiteramos las expresiones nuestra Alta Curia: "[r]esolver lo contrario implicaría sostener que la presentación de una petición de quiebra tiene el efecto de desgarrar la solidaridad". *Peerles Oil v. Hnos. Torres Pérez*, supra.

En fin, concluimos que el foro de instancia erró al denegar la reapertura del caso de epígrafe respecto al Municipio de Mayagüez, quien no es un deudor sujeto a los procedimientos de quiebra

cubiertos por el Plan de Ajuste de la Deuda del Gobierno de Puerto Rico.

**-IV-**

Por los fundamentos expuestos previamente, se **expide** el auto de *Certiorari* y se **revoca** el dictamen recurrido. En consecuencia, se ordena la continuación de los procedimientos contra el Municipio de Mayagüez conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones